BRAY'S ADMINISTRATOR V. SELIGMAN'S ADMINISTRATOR.

1. **Practice**: PLEADING: ESTOPPEL. A party who has tried his case upon a theory involving the tacit concession of a particular fact, will not be permitted in the appellate court to obtain a reversal of the judgment against him upon a theory involving a denial of that fact.

2. **Stockholder's Liability**: PARTNERSHIP. Where a partnership owns stock in an insolvent corporation, a member of the firm will be liable to an execution against himself individually, as a stockholder, upon the motion of a creditor of the corporation, in all cases where the firm would be subject to such liability.

*Appeal from Jasper Circuit Court.*—HON. JOSEPH CRAVENS, Judge.

AFFIRMED.

Bray filed a motion in the Jasper circuit court, at the September term, 1875, asking for the issuance of an execution in his favor for the sum of $2,000 and interest thereon against Seligman, alleging as the grounds of his motion: The recovery by him in said court at the November term of a judgment for said sum against the Memphis, Carthage & Northwestern Railroad Company, the issuance of an execution on said judgment returnable to the March term, 1875, of said court, and a return of *nulla bona* thereon by the sheriff of Jasper county; that at the date when said execution was issued Seligman was the owner of $6,000,000 of the capital stock of said company, all of which was unpaid; that Seligman had been duly notified that application would be made at the September term, 1875, of said court, for an execution against him for the amount of the judgment so recovered as aforesaid.

Thereupon Seligman filed the following answer: Now comes Joseph Seligman, and for his answer herein to plaintiff's motion for execution against him as an alleged stockholder of the defendant corporation, says, as to whether plaintiff obtained a judgment against said corporation, and obtained an execution against the same, or as to whether

said execution was returned *nulla bona* or not, he has not sufficient knowledge or information to form a belief. And this defendant, for further answer, says it is untrue that he ever was, or is now, a stockholder in said corporation, and says, that in truth, he never was the owner or holder of any stock in said defendant corporation, except as hereinafter stated. And he says that in the year 1872, said corporation issued certain bonds to the amount of about $800,000, which bonds were secured by a deed of trust on all the property of said corporation; that the firm of J. & W. Seligman & Co., of New York, was made the financial agent of said corporation to negotiate and sell said bonds in the market, of which firm this defendant was a member; that one of the members of said firm, to-wit: Jesse Seligman, was one of the trustees in said deed of trust; that said bonds were negotiated and sold; that said firm made large advances on said bonds and became a holder of the same to the amount of over $400,000; that all of the property of said corporation, including its railroad, rolling stock, earnings and income, were pledged by said deed of trust, to the payment of said bonds and the interest thereon; that the capital stock of said corporation was $10,000,000, and six millions of the said stock were deposited with said firm of J. & W. Seligman & Co., in trust, as security for the payment of said bonds, to be held by said firm for the purpose of controlling said corporation and its organization, so that the affairs of the same should be managed honestly, and the earnings applied to the payment of said bonds and the interest thereon, and for no other purpose; said stock being the property of said corporation, to be returned to it, and was only held in trust and as additional security for the payment of said bonds, and for no other purpose; and defendant says he never subscribed for, bought or held any of the stock of said corporation, except as above stated; wherefore, he says no execution ought to issue against his property for the debt of said defendant corporation.

Upon the trial the plaintiff offered in evidence the record of the judgment and the executions that were issued thereon, one to the sheriff of Jasper county, and one to the sheriff of Lawrence county. The return by the sheriff on the former was, that he had executed the writ in the county of Jasper on the 27th day of January, 1875, by levying upon all the right, title, interest and claim that the corporation had in the right of way for their railroad over a strip of land 100 feet wide, being fifty feet wide on each side of the center of the road-bed as the same was surveyed and constructed through the town of North Carthage, and also in a number of lots, designating them, situated in said town. The sheriff further certified that the execution was returned by order of plaintiff March 8th, 1875. The return on the Lawrence county execution was dated February 27th, 1875, and stated that he had been unable to find any property of defendant in said county. The testimony of plaintiff's witnesses tended to show that at an election for officers of the company in March, 1873, a $6,000,000 certificate of stock was voted by the proxy of J. & W. Seligman & Co., to whom it had previously been issued by the company, and that Joseph Seligman, defendant's intestate, was a member of that firm; that said firm did not. subscribe for the stock, and did not pay for it; that they made advances or loaned money to the company; that they held all the company's bonds in the beginning, and were to act as its financial agents in the city of New York, and sell its bonds, and the object in giving them the stock was to assure to them the control and management of the road, so as to secure the bonds; that the stock was to remain the property of the company and be returned to it and was issued in pursuance of a resolution of the board of directors ordering that in making negotiations for money with said firm that a certificate for a majority of the capital stock of the company be issued to said firm to hold in trust for the period of twelve months; that Jesse Seligman, one of the members of the firm, was also one of the

3—75

trustees in a deed of trust executed by the company to secure its bonds.   Defendant offered no evidence, but elicited on cross-examination part of the testimony stated.

The declarations of law asked by, and given on behalf of, plaintiff, were the following:

1.   If the court finds from the evidence that Joseph Seligman was a member of the firm of J. & W. Seligman & Co., and that said firm held and voted the majority of the stock of the said Memphis, Carthage & Northwestern Railroad Company, amounting to $6,000,000, and did by virtue thereof, actually control the management of said company for their own advantage, in securing themselves for money advanced in the building of said railroad, and putting the same in operation, and that said firm continued to so hold and vote said stock until said company became insolvent, and until plaintiff's execution was issued, then said firm is liable for the amount of said stock, and the defendant is also individually liable to the like extent, although there may never have been any other transfer to them of said stock, than by the certificate thereof produced in evidence.

2.   That if the defendant, or his firm, furnished the money whereby said road was constructed and put in operation, and had the control of a majority of the stock of said company, voting the same at the elections of the company for officers, and thus the management of the road was entirely in the hands of said firm, for their own benefit, as well as that of others, their said stock was not held in such fiduciary capacity as is contemplated in section 9, chapter 63, page 336, General Statutes.

3.   If the court finds from the evidence that the majority of the stock of said company appeared on the stock book of the company in the name of the defendant, or in the name of the firm of which he was a member, and that the defendant, or his said firm voted said stock, either in person or by proxy, at the election of officers for the company, then the defendant is estopped from now claiming

that he held said stock as merely collateral security, or in some fiduciary capacity, but must be held in all respects (as to third parties dealing with said company) as the absolute owner or owners of said stock.

4. That if the court finds from the evidence that the certificate attached to Seligman's deposition, representing six millions of the stock of said company, represented all the stock of said company, except small amounts issued to enable other persons to vote at elections, and that said firm of Seligman & Co. held the same so as to enable them to control the election of officers, and the management and control of the road, and that they did so use said certificate of stock; and that said stock stood on the book of said company, known as the stock book, in the name of defendant, or J. & W. Seligman & Co., then although, the certificate as given in evidence, states that it was issued in trust to enable said Seligmans to protect themselves and others, and pay the debts of the company, and to secure them for any advances that they may have made, and to give credit to the bonds of said company deposited and held by said Seligman and others, then the defendant is bound as a stockholder to creditors of said company

Declarations of law asked by defendant, but refused, were the following:

1. Unless the court should find the fact to be, that Joseph Seligman was a stockholder or the owner of stock in his own right in the defendant corporation, the court declares the law to be, that no execution can lawfully issue against him on plaintiff's judgment, and if the court finds the fact to be, that the firm of J. & W. Seligman & Co. (of which firm Joseph Seligman was a member) held 60,000 shares of stock in said defendant corporation, in trust or as collateral security, for the benefit of the bondholders or creditors of the company, and to enable them as financial agents of the company, to successfully negotiate and sell its mortgage bonds, which stock was issued to them in pursuance of a resolution of the board of directors, and

did not hold said stock as absolute owners of the same, then said firm, nor any member of the same, is liable under the laws of this State, to an execution for the amount of plaintiff's judgment.

2.   Even if the firm of J. & W. Seligman & Co. (of which firm Joseph Seligman was a partner) were stockholders, and as such, liable, still the court declares the law to be, that an execution cannot issue against one individual member of said firm, because the interest cannot be severed, but an execution would have to be issued against the firm.

The trial court found, and gave judgment, for the plaintiff.   In its finding it recited the fact of the insolvency of the corporation.   The grounds assigned in defendant's motion for a new trial were the following:   (1) The court erred in refusing declarations of law asked for by defendant.   (2) The court erred in granting declarations of law asked for by plaintiff.   (3) The court erred in awarding execution against defendant, because defendant was shown by the evidence not to have been a stockholder. (4) The court ought to have overruled the motion for execution.   (5) The finding of the court is contrary to the evidence.   (6) The finding and judgment of the court is contrary to the law.   This motion was overruled, and defendant appealed to this court.

*James O. Broadhead* and *H. H. Harding* for appellant.

The sole ground of the motion was that an execution had been issued to Jasper county, and that the sheriff had returned it " no property found," which the evidence did not sustain.   The motion did not refer to the Lawrence county execution at all.   All the proceedings prior to the motion for execution were against the corporation and afford no presumptions against Seligman.   The finding of fact in the judgment that the corporation was insolvent was an impertinent finding.   It was not alleged in the motion

nor in any manner put in issue, nor was there any evidence whatever on the subject. The return of the sheriff on the execution issued to Jasper county not only does not show that no property of the corporation could be found whereon to levy, but does show that a large amount of property was found and seized and levied on as its property, and then that plaintiff ordered the execution returned. There was no evidence that the property levied on was not the property of the corporation, or that it was for any reason insufficient to satisfy the execution; nor was there any evidence whatever of the insolvency of the corporation.

In the *Griswold case* this court put some stress upon the fact that parol evidence was not admissible to show how they held the stock, or that they held it as collateral security or in trust, etc. In this case the whole evidence is parol, and all introduced by the plaintiff himself. He saw proper to show the whole transaction just as it was. If that evidence establishes one thing more clearly than another, it is that the Seligmans had no relation to that corporation except as loaners of money to it on the security of that stock and the mortgage bonds. That was the understanding of all the parties at the time. They were not promoters or originators of the corporation, inducing others to take stock in it or to credit it. It was a local corporation organized down in Southwest Missouri to build a railroad. It ran short of money, and went to New York to borrow. Seligmans were bankers engaged in loaning money on that class of securities, and an arrangement was made by which they were to loan this corporation money; of course they took security. What security did they take? Why, a deposit with them of the mortgage bond and a majority of the capital stock. Now is it possible any court can say that in thus taking security as they supposed, and as all parties understood it, they were, instead, assuming a stupendous liability—a liability for $6,000,000. But the plaintiff claims that they voted it and got control of the corporation. Who was wronged by that? Cer-

tainly not the corporation, for its officers assented to the voting and all seemed to understand that it was contemplated that it might be voted.   The Seligmans did not own the stock—they could not sell or transfer it—they were to have no beneficial interest in it—could draw no dividends— could not hypothecate it—they were to return it to the corporation, whose property it was all the time.   It is true that this court seemed to say in the *Griswold case* that a corporation could not own its own stock; but surely, in the light of the law, as determined by numerous decisions, when that question has been directly involved, that expression of the court was not well considered, and we think will not be adhered to.   A corporation may own, buy and sell its own stock.   *U. S. Trust Co. v. Harris,* 2 Bosw. 75; *State Bank v. Fox,* 3 Blatch. 431; *Robison v. Beal,* 26 Ga. 17; *Van Cott v. Van Brunt,* 82 N. Y. 535.   Instead of estoppel existing in favor of the corporation as against Seligmans, it is clearly the other way; the corporation is estopped from now saying that the Seligmans held the stock in any other way than as security.   The corporation got nearly half a million of their money on that as security, not as stockholders.   Surely on every principle of justice and reason they can invoke in their favor the doctrine of estoppel, as against the railroad company.   Nothing has been more common in this country than secured creditors being compelled to take the property of mortgageors— both individuals and corporations—thus leaving unsecured creditors (as in this case) unprovided for.

*Jere C. Cravens* for respondent.

The legal title to issued stock must reside in some person other than the corporation.   The fact that the Seligmans were stockholders, is proved both by the certificate itself and by their participation in the election of officers.   *Adderly v. Storm,* 6 Hill 624; *Rosevelt v. Brown,* 11 N. Y. 148; *Wheelock v. Kost,* 77 Ill. 296.   A party can-

not hold stock in his own name for the purpose of controlling the management of a corporation and then be permitted to say that he holds the same only as collateral security. *Pullman v. Upton*, 6 Otto 328; *National Bank v. Case*, 9 Otto 628; *Barrett v. Schuyler Co.*, 44 Mo. 197; *Kansas City Hotel Co. v. Harris*, 51 Mo. 464; *Gill v. Balis*, 72 Mo. 424. A corporation cannot be a stockholder of its own issued stock. *Ex parte Holmes*, 5 Cow. 426; *State v. Smith*, 48 Vt. 266; *Am. R'y Frog Co. v. Haven*, 101 Mass. 398; *Griswold v. Seligman*, 72 Mo. 110. Parol evidence was competent to prove the defendant a stockholder, and that he voted said stock. *Dows v. Naper*, 8 Reporter 522; 1 Greenl. Ev., (Rev. Ed.) § 97; *Massey v. Westcott*, 40 Ill. 160; *Wardwell v. McDowell*, 31 Ill. 364.

But it is contended that there was no evidence of the corporation's insolvency. Was not the case tried on both sides on the theory that such was the fact—was any question made as to the solvency of the corporation? Is the idea that it was solvent, even hinted at anywhere throughout the record? Is all this to go for nothing? But the court did find from the evidence that the corporation was insolvent; are no presumptions to be indulged in favor of the court's finding? The instructions asked by plaintiff and given, are hypothecated on the fact of insolvency. How is this court to overthrow the presumptions in favor of that finding. How is the court to determine (even in the absence of evidence in record) that the insolvency of the corporation, the sale of its assets and franchises, and its utter demolition, was not apparent to the court trying the case, because of its very notoriety. 1 Wharton Ev., (2 Ed.) §§ 329, 330; *Waldo v. Russell*, 5 Mo. 393; *Wayne Co. v. St. L. & I. M. R. R. Co.*, 66 Mo. 77; *Davis v. Brown*, 67 Mo. 313; *Fields v. Hunter*, 8 Mo. 131. If this whole transaction was not a cunningly devised scheme to enable capitalists to build, equip and operate a railroad without being subjected to the legal liabilities attending such enterprises—"to play fast and loose" as occasion and their

pecuniary interest might dictate—to fraudulently evade the laws of the land; it certainly evinces the most wonderful adaptation of means to an end that has ever come to pass by chance.

## I.

SHERWOOD, C. J.—This case, in its essential features, is like *Griswold's case*, 72 Mo. 110, and *Fisher's case, ante,* p. 13. This point of difference is, however, presented by this record: Two executions were issued against the corporation, one to Lawrence county, the other to Jasper county, the former returned *nulla bona;* the latter levied on certain property, consisting chiefly of the road-bed of the corporation—the residue being lots in North Carthage. Defendant filed his answer, wherein he set forth certain grounds and reasons why recovery should not be had against him, but made no issue as to the insolvency of the corporation. At the trial such insolvency was tacitly conceded. This being the case, it is quite too late to raise an objection on this score now. As numerous decisions of this court attest, a party will not be allowed to try his cause on one theory in the trial court, and then, if beaten there on ground of his own choosing, spring a fresh theory on his adversary in this court. Besides, the motion for execution alleged the insolvency of the corporation. The defendant answered the motion by filing a formal answer thereto. This it seems he need not have done under the provisions of section 13, page 291, 1 Wagner's Statutes; but having elected thus to do, and having failed to deny the insolvency of the corporation, that fact must be deemed as much admitted as though a formal pleading were requisite.

## II.

The declarations of law asked by plaintiff, were in full conformity with our views as heretofore expressed in the cases already cited. And we regard as unsound the position assumed in defendant's second declaration of law, to

the effect that an execution cannot issue against one, a member of a firm of stockholders, but must issue against the firm. Each member of a partnership is liable for the indebtedness of the firm. The liability of the partners is joint and several, and we see no reason, founded in principle, why in a proceeding like the present, one member of a firm may not be held answerable, as if he were sued in an ordinary action on the partnership indebtedness; in which latter event no doubt could be entertained. The result is, that we affirm the judgment. Hough and Ray, JJ., concur.