# HOME TELEPHONE COMPANY v. CITY OF CARTHAGE, Appellant.

In Banc, July 1, 1911.

1. **TELEPHONE RATES: Public Utilities Act: Service Outside Corporate Limits: Evidence.** Under the Public Utilities Act of 1907, granting to municipalities power to fix by ordinance the charges for telephone service "within their corporate limits," the power of a city to fix rates for telephone service is restricted to service within its corporate limits, and, therefore, in a suit to determine whether or not the rates fixed by an ordinance are reasonable or confiscatory, testimony tending to show a large amount of free service to resident subscribers with persons outside of said limits and in neighboring towns, is not relevant to the issue of the reasonableness of the rates prescribed by the ordinance for service wholly within the city. A subscriber cannot be legally charged a higher rate for service within the city because of free outside service, nor can he be burdened with additional and more expensive apparatus and facilities made necessary solely by reason of the extension of the company's plant for business connections beyond the limits of the city.

2. ————: ————: **Injunction: All Rates: Theory of Trial.** An appellant cannot be permitted to shift its position on appeal. Where the statute provided that the telephone rates fixed by ordinance should be reasonable, and in pursuance to that statute the city passed an ordinance fixing maximum rates, and the company brought its suit alleging such rates to be unreasonable and confiscatory, and the judgment sustained its contention, and the city appealed, the city will not on appeal be heard to contend that the judgment must be reversed because it enjoins the enforcement of all rates, those fixed by the ordinance as well as those fixed by the company's original franchise, alleged to be valid regardless of the validity of the ordinance.

3. ————: ————: ————: ————: **Not Applicable to Whole City.** Where the franchise fixed the rates within one mile of the central office, the city cannot, on an appeal from a judgment enjoining the enforcement of an ordinance fixing rates for the whole city, raise the question of its right to enforce the franchise rates.

4. **EQUITY: Exclusion and Admission of Evidence: Reversal.** The exclusion of competent evidence offered by appellant in an equity case, and the admission of incompetent evidence offered

by respondent, is not a ground for reversal, where the evidence so excluded or admitted is preserved in the record, since the court will disregard such testimony as it finds incompetent and consider such as it regards as competent, and render such judgment as equity and justice may require, upon the pleadings and the proper evidence tendered.

5. **TELEPHONE COMPANY: Reasonableness of Rates: Evidence: Circular Showing Earnings.** In a suit to enjoin the enforcement of telephone rates fixed by an ordinance, on the ground that they are unreasonable and confiscatory, a circular advertising for sale the bonds of the company, in which it is stated the earnings of the entire system were for the preceding year a certain sum, and sent out by an investment company whose president was also president of the telephone company, is not competent, if it is not shown that the telephone company, through its officers in the discharge of their official duties, were in some manner responsible for the issuance of said circular. The fact that the same man was president of both companies is not sufficient to make the circular competent as an admission against the telephone company.

6. ———: ———: **Constitutionality of Statute: Public Utilities. Act.** The Act of 1907, empowering a city by ordinance to fix telephone rates, requires such rates to "be reasonable," and hence it is not in conflict with either the State or Federal Constitution inhibiting a law depriving the company of its property and destroying its business without due process of law. The rates fixed by the city must be reasonable, or else the ordinance is invalid, and hence the validity of the statute is not drawn in question by an ordinance fixing unreasonable rates.

7. ———: ———: **Questions Considered.** In determining the reasonableness of telephone rates as fixed by an ordinance, four factors are to be considered: First, the value of the property upon which the company is entitled to a return; second, the gross earnings of the property; third, the amount the company is entitled to deduct from the gross earnings for the successful operation of the property; and, fourth, whether the amount remaining is sufficient to give a reasonable return on the investment.

8. ———: ———: **Value of Properties.** In determining the value of the investment of the public service corporation, the rule is that the company, in order that it may have a just compensation, is entitled to a fair return upon the reasonable value of the property at the time it is being used for the public.

9. ———: ———: ———: **Cost of Properties.** The company furnished an inventory of its properties, and the expert appointed by the court set opposite each item its catalogue or invoice

price, among others, "Material, $66,256.64," and, "Original Cost of Plant, Less Deductions $23,038.75." This last item was arrived at as follows: The amount paid for the plant when purchased by the company was said to be about $37,000. In the inventory, as valued by this expert, it was estimated that property of the invoice or catalogue price of $13,961.25 was included, which was a part of the plant at the time of its purchase by the company. In estimating the total cost of the plant to the company at the time of the trial all the property in hand was valued as new, and therefore this item of $13,961.25, in order to avoid duplication, was deducted from the $37,000, and the remainder of $23,038.75, was added as a part of the cost of the property upon which the company is entitled to a return. There is no testimony tending to prove that there was any tangible property whatever, at the time of the valuation, represented by this item of $23,038.75. *Held*, that this item of $23,038.75 cannot be considered as a part of the property which, at the time of the enactment of the ordinance fixing the rates, was "being used for the public," and therefore it is excluded. It is also held in this case, after a review of the evidence, and rejecting this item of $23,038.75 as no part of the original cost of the plant, and making an allowance for the depreciation of the plant from the time the company acquired it, that $100,000 is a reasonable value of the property upon which the company is entitled to a return.

10. ———: ———: Net Earnings. Where the telephone rates fixed by the franchise were $24 for business houses and $18 for residences per year for all phones within one mile of the central exchange, and the rates fixed by the company at the time the ordinance in question was enacted were for a single phone $30 for business houses and $24 for residences, and for party line service $24 for business houses and $18 for residences, so much of an ordinance as fixed the rates at $24 for business houses and $18 for residences anywhere within the city, is a reasonable regulation, where the value of the company's properties is $100,000 and its net earnings, after deducting all operating expenses, including maintenance and repairs, are $11,473.29; but so much of the ordinance as prohibited party line service is void.

11. ———: ———: ———: Depreciation Fund. A wise and proper management of a public telephone plant requires and demands that a liberal amount should always be reserved from the earnings to keep the plant in a high degree of efficiency and to provide for emergencies. But a depreciation fund of four dollars per phone for each year or about five per cent of the total value of the company's properties, to cover what is termed, "invisible rot," where all the company's properties are valued as new, and no deduction is made for depreciation, although

$5000 per year for two years has been set apart out of the earnings to cover depreciations, and the net earnings on such valuation, without making any allowance for such fund, are over eleven and two-thirds per cent, will not be considered in determining "the reasonable value of the properties at the time it is being used by the public." And an ordinance fixing telephone rates at $24 per year for business houses and $18 for residences, will not be held unreasonable on the theory that the earnings of the company should be decreased each year by four dollars per phone on account of "invisible rot."

12. ——: ——: What are Reasonable Rates. No fixed and unvarying rule has been or can be announced as to what rate of return upon the investment in a telephone plant will be considered reasonable or unreasonable by the courts. Each case must depend upon its own facts. The prevailing rates of interest on money loaned, the hazard of the business, the life of the property used, the reliance upon the constancy of the return, which depends upon the existence or probability of competition, and the fact that no return whatever is guaranteed the owner of the public utility, are all proper matters for consideration. The maximum rate should be placed at a figure above the average rate of return upon reasonably safe investments in private ventures, else capital will naturally turn to channels in which no maximum limit as to the return exists.

13. ——: ——: ——: Six Per Cent. Telephone rates which would yield a less return upon the company's properties, at a reasonable valuation, than six per cent upon the investment, cannot be sustained, and an ordinance fixing such rates would be void. But where the evidence shows a return of over eleven and two-thirds per cent, upon a reasonable valuation of the properties, and of over nine and one-third per cent upon the company's own valuation, it will be *held*, that the company failed to prove that the rates fixed by the ordinance were unreasonable.

14. ——: Public Utilities: Ordinance Abolishing Party Lines. The Public Utilities Act granted to cities the power to fix reasonable rates for telephone service, but not to interfere with the right of the owner of the utility to make such use of his property as would not be inconsistent with the exercise of municipal authority in matters of local concern. So much of an ordinance as forbids, under penalty, the telephone company the right to establish party line service is void, but as that part of the ordinance fixing the rates was entirely independent of the provision forbidding party lines, it can be upheld.

15. ——: Presumptively Valid: Duty to Disclose Facts. When an ordinance is enacted by a city prescribing maximum rates to be charged for the service of a public utility, pursuant to a

statute, such ordinance is attended with the same presumption of validity that attaches to other legislative acts; and when assailed on the ground that such rates are destructive of property rights in the utility affected, there should be no hesitancy on the part of the company in placing before the court all of the evidence and the best evidence bearing upon the issues in the case; and when such issue is raised, the city should be granted full opportunity to examine the books and property of the company, by experts of its own selection.

Appeal from Jasper Circuit Court.— *Hon. Hugh Dabbs,* Judge.

REVERSED AND REMANDED.

*Perkins & Blair, J. D. Harris, H. L. Shannon* and *R. A. Hockensmith* for appellants.

(1)   The court erred in excluding Circular No. 12, issued by Theodore Gary Investment Company. The evidence shows that Gary is the president of the respondent Home Telephone Co. and president of Theodore Gary Investment Co. It shows that the net earnings of the Telephone Co. for the year preceding the statement were $50,135. The effect of the evidence of R. W. Frey, secretary and treasurer Home Telephone Co. is that he prepared the data contained in the circular relating to the Home Telephone Company. Exhibit B sworn to by Theodore Gary, president of Home Telephone Co., shows that the total value of its property on June 1, 1907, was only $33,814.50. At the trial respondent's witnesses arbitrarily fixed the value of the Carthage plant at one-fourth, which would make the total value of the Carthage plant amount to $8,453.62.   (2)   The investment on which a public service corporation is entitled to base its compensation in determining the sufficiency of rates cannot include property not at present actually employed in collecting or distributing the commodity, however useful it may have been in the past or may yet be in the future. Water Co. v. San Diego, 38 L. R. A. 460. Neither should estimated cost of supposed needed

additions or future improvements be included. (3) Re-
gardless of whether or not Carthage under its charter
and the Act approved May 8, 1907, Laws 1907, p. 119,
had power to fix telephone rates, the franchise under
which respondent Telephone Co. is operating fixes the
maximum rate it may charge and beyond the rate so
fixed the respondent cannot go since the franchise is a
contract and binding upon respondent, it having
accepted the provisions thereof and been operating
thereunder during all the times mentioned in the
petition.    Where a city makes a contract which its
charter does not permit, yet does not prohibit, although
the contract is *ultra vires* the corporation, yet it is not
illegal, because not prohibited by the charter.    St.
Louis v. Davidson, 102 Mo. 153; 2 Dillon, Mun. Corp.
(4 Ed.) sec. 936; McDonald v. Mayor, 68 N. Y. 23;
Bigelow, Estop. (5 Ed.) 685.    By the terms of the
ordinance granting the Telephone Co. its franchise
rights in the city of Carthage (including immunity
from certain taxation) contractual relations were estab-
lished between the city and the Telephone Co., and since
the Telephone Company has derived benefits under that
contract it cannot now retain those benefits and repu-
diate the source from which those benefits spring by
denying the validity of the contract in which they
originated.    In short it is estopped to grasp the benefits
of that contract with one eager hand, while thrusting
aside its burden with the other.    St. Louis v. Davidson,
102 Mo. 153; Unionville v. Martin, 95 Mo. App. 39;
Devers v. Howard, 88 Mo. App. 261; Gas. Co v.
Muncie, 160 Ind. 97; Rushville v. Gas Co., 164 Ind.
162; Noblesville v. Gas Co., 157 Ind. 162.    (4)    The
decree of the court fails to find and state the value of
respondent's telephone plant or property in the city of
Carthage or the value of its property as a whole, fails to
find and state the amount of its reasonable and neces-
sary expenses or cost of maintenance, and fails to find
and state the amount of revenue or income received

therefrom and fails to state what, in the opinion of the court, would be a reasonable profit on respondent's investment, so that this court is not informed by said decree or otherwise, what amount of profit the trial court deemed reasonable or unreasonable. By the decree, ordinance No. 926 is declared to be unreasonable and void and defendant is enjoined from taking any steps to enforce the maximum rates mentioned in said ordinance. The maximum rates mentioned in said ordinance are the same as the rates prescribed in the franchise ordinance No. 317 and that ordinance being a contract binding on the Telephone Co., the city is entitled to enforce the rates prescribed therein, hence, that part of the decree enjoining the city from taking any steps to enforce the maximum rates mentioned in ordinance No. 926 is unwarranted and erroneous, even if the rest of the decree could be upheld. The evidence of respondent's late superintendent shows that in February, 1908, the respondent established and undertook to put in force new rates in excess of the rates prescribed in said ordinances No. 317 and 926. Respondent's position is that in arriving at the basis upon which to figure a percentage of earnings to provide a fair return, there should be included every dollar that ever has been spent by itself and its predecessors in constructing and maintaining a telephone system in the city; appellant's position is that there should be an allowance for depreciation and that the value of the telephone property in use for the benefit of the public at the time of the use is the proper criterion. Appellant contends that the decree is erroneous and for the wrong party and that this cause should be reversed.

*Howard Gray, Mooneyham & Phelps* and *E. L. Shepherd* for respondent.

(1) The court did not err in excluding the circular of the Gary Investment Company. There was no testimony that this circular was ever prepared by Mr. Gary or issued by him, but if it was, it shows

plainly that it was issued by him as the representative of another corporation, and in the performance of no duty as the agent of the Home Telephone Co. (2) The appellant claims that in determining the sufficiency of rates, property not at the present actually employed cannot be included. This is true and was not done in this case, but it is proper to show all that has been invested in it. Water Works Co. v. San Francisco, 124 Fed. 592. (3) Appellant urges that whether the city had the right in 1895 to fix telephone rates, yet inasmuch as a franchise was granted and was accepted by the respondent, the respondent is estopped from now denying the validity of that franchise. There are several reasons why this proposition is not before this court. It is elementary in the practice in this State, that a party must try his case in the appellate court on the same theory it was presented in the trial court. In the trial court no issue of estoppel was raised. The appellant filed a general denial, denying there was a franchise granted in 1895, and the suit was brought to enjoin the city from putting into force the provisions of the ordinance of August, 1907. The city, if it intended to rely upon estoppel, should have so declared in its answer. Swinehart v. Railroad, 207 Mo. 423; Bank v. Doran, 109 Mo. 40; Golden v. Tyler, 180 Mo. 196; Carthage v. Light Co., 97 Mo. App. 20; Loving Co. v. Cattle Co., 176 Mo. 330. There was nothing in the pleadings raising the question of estoppel and nothing in the evidence, and the burden is on the party setting up an estoppel to make out the facts on which it rests. Tring v. Krisler, 90 Mo. 649. The rule is also well settled that a party who has not been injured by another's conduct cannot make such conduct grounds for an estoppel. Amy v. Ramsay, 4 Mo. 505; Burke v. Adams, 80 Mo. 504; Noble v. Blount, 77 Mo. 235; Bales v. Perry, 51 Mo. 449. (4) Even admitting the appellant can change his theory in this court, and admitting that he can have the benefit of an estoppel

without pleading it, and admitting that it is not neces-
sary to show any testimony upon which to base an
estoppel, yet it is well settled that the city had no
authority or power to enter into the contract of 1895.
St. Louis v. Tel. Co., 96 Mo. 623; State v. Tel. Co., 189
Mo. 83; State v. Sheboggin, 86 N. W. 657; Tel. Co. v.
Milwaukee, 104 N. W. 1009; Farmer v. Tel. Co., 74 N. E
1078; Wright v. Tel. Co., 99 N. Y. Supp. 85; Water
Co. v. Freeport, 180 U. S. 587. (5)   To determine the
reasonable value of the property at the time it is being
used for the public service, and in determining this
value, the following elements are to be included in the
estimate:   The cost of the plant, the cost per annum of
operating, including interest paid or money borrowed
and reasonably necessary to be used in constructing the
same; the annual depreciation of the plant from natural
causes resulting from its use; the amount of repairs made
necessary and which are not included in the item of
natural depreciation.   Land Co. v. National City, 174
U. S. 739; Water Works Co. v. Kansas City, 62 Fed.
853.

KENNISH, J.—This suit was instituted in the circuit
court of Jasper county on the 28th day of August, 1907,
by the respondent, the Home Telephone Company,
herein referred to as the complainant, against the City
of Carthage, appellant, and certain officers of said city.
The Act of the General Assembly of 1907, known as the
Public Utilities Act, now sections 9568, 9569 and 9570,
Revised Statutes 1909, had gone into force and effect
shortly before the filing of this suit, and pursuant to the
power conferred upon municipalities by said act, the
city of Carthage had adopted an ordinance regulating
the telephone business and prescribing maximum rates
of charge for the use of telephones within said city.
Immediately upon the taking effect of said ordinance,
complainant brought this suit for the purpose of having
the court decree and adjudge the ordinance invalid and
the rates therein prescribed unreasonable, and to have

the city and its officers restrained and enjoined from taking any steps for the enforcement thereof.

A restraining order was issued upon the filing of the petition, and upon final hearing at the February term, 1908, the said ordinance was adjudged invalid and the rates prescribed unreasonable, and the city and its officers were perpetually enjoined as prayed for in the petition. The city alone, in due time, appealed to this court. After the appeal was perfected complainant filed a motion in this court praying that the cause be advanced on the docket and assigning as a reason therefor that under the provisions of said Act of 1907 the case was entitled to precedence over other civil causes. This motion was sustained and the case is now before us for decision.

The petition alleged substantially the following facts:

That plaintiff was incorporated under the laws of this State in the year 1902, and now owns and operates a telephone exchange in the city of Carthage and adjoining territory. That the defendant is a municipal corporation, organized under the laws of this State as a city of the third class, and that the other defendants are officers of said city, charged with the enforcement of its ordinances. That on the 25th day of March, 1895, an ordinance, which is set out in extenso, was adopted by the said city, granting a franchise to the American Electric Telephone Company, its successors and assigns, to construct and maintain a telephone exchange and telephone lines, with all of the rights incident to and necessary for the carrying on of a telephone business in said city. The provisions of said ordinance exempted the said telephone company from the payment of special licenses and taxes and, in consideration therefor, the company obligated itself, its successors and assigns, for the period of twenty years from the date of the acceptance of the ordinance, to perform certain agreements therein set out, one of which was that the

grantee would furnish telephone service to subscribers at the rate of twenty-four dollars per annum for business houses and eighteen dollars for residences, within a radius of one mile from the exchange of said company, which exchange should be located as near as possible to the business center of said city. That the said grantee assigned and conveyed all of its property and franchise rights in said city of Carthage, including its exchange, to Wheeler & Clark, and that the latter made the same transfer and assignment to the Mineral Belt Telephone Company, which in turn, on the 6th day of September, 1902, made a like conveyance and assignment to the complainant, and that the latter has ever since owned and operated said telephone exchange, with all of the rights and privileges in connection therewith.

It is alleged that said property of the plaintiff within the city of Carthage represents an investment of one hundred and fifty thousand dollars and is reasonably worth that amount, all of which is necessary for the carrying on of said business. That to operate said telephone property in said city of Carthage and adjacent territory and to meet the fixed charges, consisting of interest and a renewal reserve, will require an outlay and total expense of $28,402.28 per annum. That plaintiff is supplying 1396 subscribers in said city with telephone service, and that plaintiff had established and put into effect a rate for single line telephones of thirty dollars per year for business houses and twenty-four dollars for residences, and for party line service, twenty-four dollars per year for business houses and eighteen dollars for residences. That the rates so fixed are fair, reasonable, equitable and just.

It is further alleged that the defendant, the city of Carthage, on the 28th day of August, 1907, pursuant to an act of the General Assembly of that year, known as the Public Utilities Act, adopted Ordinance No. 926, fixing maximum rates for telephone service in said

city, which rates and ordinances are set out in the petition, the rates being practically the same as those fixed by the franchise ordinance of 1895.

It is then alleged that the rates so fixed by Ordinance 926 are unreasonable, confiscatory and insufficient to permit plaintiff to operate its said property without loss. That said ordinance and the act of the General Assembly are violative of several designated provisions of the Constitution of this State and of the Federal Constitution. That the defendant and the defendant's officers are threatening to enforce said ordinance, which would greatly injure the plaintiff in its business and subject it to a multiplicity of suits, and injunctive relief is prayed as before stated.

After an unsuccessful demurrer to the petition, the defendant answered by a general denial, and the cause was thus at issue.

Section 1 of Ordinance 926 is as follows:

"It shall be unlawful for any person or persons, firm or corporation owning or operating any telephone line, system or exchange, within the corporate limits of the city of Carthage, to exact, require or demand, for the rental and use of telephones and for telephone service within the corporate limits of said city more than the following rates of charge therefor, to-wit:

"For business telephone and service thereof, $24 per year.

"For residence telephone and service thereof, $18 per year.

"Each of such telephones shall be directly connected by an individual telephone line with the central or exchange office of the system of which such telephone shall be a part; and no other telephone shall be connected with the central or exchange office through or by the means of the same telephone line. And it shall be unlawful for any such person or persons, firm or corporation, so owning or operating any such telephone line, system or exchange, in said city, to fail or refuse to

connect any such telephone, whether the same be now installed or shall be hereafter installed with the central or exchange office of the system of which such telephone shall belong, by an individual telephone line; and it shall be unlawful for any such person or persons, firm or corporation to connect or cause to be connected any other telephone with the central or exchange office through or by means of any such individual line of any such telephone.''

At the trial much testimony was introduced by the respective parties in support of the issues presented. It need not be set out here, but will be referred to in connection with the points hereinafter discussed.

In order to a proper understanding of the case it should be prefaced that the complainant, Home Telephone Company, owned and operated a telephone system which extended to and included plants in three other large cities, besides the plant in the city of Carthage, concerning which the present controversy arose.

The earnings and receipts which were earned by the Carthage plant alone were credited to it, and the expenses incurred by that plant were charged to it, but as to the earnings and expenses which were common to the entire system, twenty-five per cent was assigned to the Carthage plant as a fair apportionment.

The foregoing is deemed a sufficient statement for a proper understanding of the questions presented.

The Public Utilities Act of 1907 granted to municipalities the power to fix by ordinance ''the rates of charge for the services of such utilities within their corporate limits.'' The power of the defendant city to fix telephone rates was thus restricted to the corporate limits of the city, and therefore the testimony of the complainant tending to show a large amount of free service afforded to resident subscribers with persons outside of said limits and in neighboring towns, was not relevant to the issue of the reasonableness of the rates provided by the ordinance for service which was

wholly within the city. Complainant was as much entitled to remuneration for service extending beyond the city limits as for service within, but the ordinance does not include such service, and the subscriber could not legally be charged a higher rate for city service because of free service outside. Neither should the cost of serving subscribers with city service be burdened with additional and more expensive apparatus and facilities made necessary solely by reason of the extension of complainant's plant for business connections beyond the limits of the city.

It is urged by appellant that the judgment should be reversed for the reason that it enjoins the enforcement of the rates prescribed in Ordinance 926 as well as the enforcement of the ordinance itself, and that as the city was entitled to the same rates under the franchise ordinance of 1895, regardless of the validity of Ordinance 926, the court erred in perpetually enjoining the city from enforcing the said rates.

It appears that complainant and its predecessors, since the granting of the franchise in 1895, had carried out the provisions of the franchise as to rates until February, 1907, being shortly before the said act of 1907 became a law, at which time a different and higher schedule of rates was announced by complainant.

If appellant had relied upon its contract rights under the franchise ordinance of 1895 and this appea' had been in a proceeding brought by the city to enforce such rights, the city in that case could have consistently asked the judgment of this court upon that issue, but it did not choose to adopt that course. On the contrary it proceeded to exercise the newly acquired power to legislate upon the subject of telephone rates by adopting Ordinance 926. The law which delegated to municipalities the power to fix maximum rates also provided that such rates must be reasonable, and complainant brought this suit as authorized by the express provisions of that law, alleging the unreasonableness and con-

235 Sup.—42

fiscatory character of the rates prescribed by said ordinance 926 and praying relief therefrom. The city filed a general denial, putting in issue the alleged unreasonableness of such rates, and it was upon that theory the case was tried and decided in the trial court. Having accepted the issue thus tendered and tried the case thereon, the city cannot now be permitted to shift its position on appeal. [Henry County v. Citizens' Bank, 208 Mo. 209, l. c. 226; Sumner v. Rogers, 90 Mo. 324, l. c. 330; Bray v. Seligman, 75 Mo. 31.]

An additional reason why the appellant cannot raise the question as to its right to enforce the rates fixed by the franchise ordinance of 1895, is that the rates in controversy in this case were, by the act of appellant in ordinance 926, made applicable to the entire city, while the rates as fixed by the franchise ordinance applied only to telephones within a radius of one mile from the central office of the company.

Appellant complains of error in the admission of incompetent evidence' offered by the plaintiff and in the exclusion of competent evidence offered by the defendant.

The testimony admitted over the defendant's objections is in the record before us and as this is an equity case this court will not reverse the judgment upon the ground now under consideration, but will disregard such testimony as it finds incompetent and render such judgment as equity and justice may require upon the pleadings and the evidence properly admitted. [Hanson v. Neal, 215 Mo. 256; Reynolds v. Kroff, 144 Mo. 433; Padley v. Neill, 134 Mo. 364.]

The only testimony offered by defendant which was not admitted was a printed circular issued by the Theodore Gary Investment Company, advertising for sale the bonds of certain telephone companies, among which were alleged bonds of the Home Telephone Company, complainant in this suit. The statement is made in the circular that the net earnings of the complainant,

which included the entire system, for the preceding year, were $50,135.00. It was shown that Theodore Gary was the president of both the complainant telephone company and the investment company which issued the circular, but it was not shown that the complainant, through its officers in the discharge of their official duties, caused or was in any manner responsible for the issuance of said circular, and the fact that the president of the complainant was also the president of the corporation which sent out the circular, was not alone a sufficient foundation to make it competent as an admission against complainant in this case, and we hold that the evidence was properly excluded by the court. [Northrup v. Ins. Co., 47 Mo. 435; Costigan v. Michael Trans. Co., 38 Mo. App. 219; 1 Ency. of Ev. 556.]

The question of dominant importance presented is as to the sufficiency of the evidence to support the decree holding the rates fixed by ordinance 926 unreasonable and the ordinance void and unenforcible. That part of the decree making this finding is as follows:

"The court further finds from the evidence that, taking into consideration the value of the property of the plaintiff, to-wit, its telephone plant in the city of Carthage, and taking into consideration its reasonable and necessary expenditures for salaries for its officers, and its servants, agents and employees, together with the cost of maintenance and necessary expenses, the charges permitted and fixed in said ordinance of August 28, 1907, will not yield a revenue to the company so as to permit the plaintiff company to make a reasonable profit on its investment, and for that reason the court doth order and adjudge that the said ordinance of August 28, 1907, is unreasonable and void."

Before entering upon a consideration of the law and the evidence bearing upon the question of the reasonableness of the rates as fixed by Ordinance 926, a preliminary question is presented, as to the statutory

or constitutional authority by which the reasonableness of such rates and the validity of the ordinance are to be tested.

In plaintiff's petition it is alleged that the Act of the General Assembly of 1907 and Ordinance 926, adopted pursuant thereto, are unconstitutional and void, because in conflict with section 30 of article 2 of the Constitution of this State, and section 1 of the Fourteenth Amendment to the Constitution of the United States, in that they deprive complainant of its property and destroy its business without due process of law.

The Act of 1907, by authority of which alone cities were granted the power to fix rates of charge for the service of public utilities, gave full recognition to the right of persons, firms and corporations owning such utilities, to receive reasonable compensation for the services rendered by providing that the rates fixed "must be reasonable." In view of this inhibition, it is not clear how said act could be in conflict with the constitutional guaranties invoked, or have the effect ascribed to it in complainant's petition.

Under that act the city was without power to fix rates that were not reasonable, and if the testimony in this case shows that the telephone rates prescribed by Ordinance 926 were not reasonable, it must follow that the ordinance is void and the judgment should be affirmed, without regard to the constitutional provisions referred to. On other hand if, under the evidence, the rates were such that after making the necessary deduction from the gross earnings for the proper operation and maintenance of the telephone property, a sufficient amount remains to pay a fair return upon the reasonable value of the property used in the telephone business then, whether tested by the statute or by the Constitution, the ordinance must be sustained and the judgment reversed.

In determining the question of the reasonableness of the rates as fixed by Ordinance 926, it becomes necessary to consider four factors: First, the value of the property upon which complainant was entitled to a return. Second, the gross earnings of the property. Third, the amount which complainant was entitled to deduct from the earnings for the successful operation of the property. And, fourth, whether the amount remaining was sufficient to give a reasonable return on the investment. We shall consider these in the order given.

The rule of law now generally recognized as the basis upon which the reasonableness of the return is to be determined, so far as the value of the investment is concerned, is expressed as follows: "What the company is entitled to demand, in order that it may have just compensation, is a fair return upon the reasonable value of the property at the time it is being used for the public." [San Diego Land and Town Co. v. National City, 174 U. S. 739; Smythe v. Ames, 169 U. S. 466; San Diego Land and Town Co. v. Jasper, 189 U. S. 439.]

. The question arises, what was the reasonable value of complainant's property being used for the public at the time of the adoption of Ordinance 926? It is shown by the evidence that complainant had purchased the property less than five years before the filing of this suit, and no good reason appears why it could not have given the most satisfactory answer to the foregoing question by the production of its books and invoices. Instead of taking that course several expert witnesses, some from a distance and others who were connected with the company, gave in evidence their opinions as to the value of complainant's property, basing such opinions on its value as an entirety, or by placing an estimated value thereon ranging from seventy-five to one hundred dollars per telephone in use. According to this testimony the value of the prop-

erty was about one hundred and twenty-five thousand dollars. Some confusion exists in the record upon the question of the value of complainant's property, because of the fact that in speaking of the Carthage plant as a part of the system a number of telephones were included which were outside of the limits of the city. One witness testified that while there were 1300 telephones in the Carthage exchange, there were only about 1040 actually within the city.

It appears in evidence that when the city council was considering the question of telephone rates, preparatory to the passage of Ordinance 926, complainant submitted a statement of its property, earnings and expenses, sworn to by one of its officers, in which the property of the Carthage plant was valued at one hundred and fifty thousand dollars, and it was therein stated that this "was a very conservative estimate." The officer who verified that statement testified at the trial that it was an estimated value and that the true value, as since determined, was $125,875.64.

It appears in the record that, after the evidence was in and at the argument of the case, complaint was made by counsel for appellant that the city had not been given an opportunity for an expert examination of the complainant's books and property, whereupon the court appointed an expert to make such examination and continued the case for two weeks in order that the testimony of such expert might be secured. The court named a second expert to assist in such examination. In due time these experts made their report to the court and one of them was examined as a witness by the city. This report was introduced in evidence, not by the city, but by the complainant.

The report of these experts sets out an itemized statement of the property of the company and the value of each article. The expert testified that they took the inventory made by the complainant and set opposite each item the catalogue or invoice price. By that

means the total valuation was arrived at, of which the following summary was given in the report, namely:

| | |
|---|---:|
| Material.............................. | $66,256.64 |
| Labor................................ | 27,828.78 |
| Incidentals.......................... | 9,408.54 |
| Engineering, etc..................... | 3,400.00 |
| Tools................................ | 410.00 |
| Wagons and buggies.................. | 80.00 |
| Furniture & Fixtures................. | 575.00 |
| Wire chief's desk.................... | 70.25 |
| Original cost of plant less deductions.... | 23,038.75 |
| Total cost of plant................. | $131,066.86 |

This report, which made the value of the plant over five thousand dollars more than the company claimed at the trial, contains some things which deserve mention. The separate item for "incidentals," according to the testimony of this expert, was not found in the invoice or account of the company, but was included in the report after consultation with another telephone man. The item for "engineering" was obtained in substantially the same manner.

The large item of value in the report of this expert, "Original Cost of Plant Less Deductions, $23,038.75," was arrived at as follows: The amount paid for the plant when purchased by the complainant in 1902 was said to be about thirty-seven thousand dollars, although no witness testified of his own knowledge as to the price actually paid. In the inventory as valued by this expert, it was estimated that property of the invoice or catalogue price of $13,961.25 was included, which was a part of the plant at the time of its purchase by complainant. In estimating the total cost of the plant to the complainant at the time of the trial all of the property on hand was valued as new and, therefore, this item of $13,961.25, in order to avoid duplication,

was deducted from the thirty-seven thousand dollars, and the remainder, $23,038.75, was added as a part of the cost of the property upon which complainant was entitled to a return.

There is no testimony tending to prove that there was any tangible property whatever, at the time of the valuation, represented by this item of $23,038.75. Whether it represented what had been paid for the good will or franchise value of the business when the plant was purchased, or whether the property originally purchased had depreciated or gone into disuse to that extent, does not appear, but in either case we are not aware of any principle of law which would justify including it as a part of the property which, at the time of the adoption of Ordinance 926, was "being used for the public."

Rejecting the item of $23,038.75 for the original cost of the plant, as not representing any property then in the service of the public, and making an allowance for the depreciation of the plant, we have arrived at the conclusion that one hundred thousand dollars is a reasonable value of the property upon which the complainant was entitled to a return. This valuation does not differ materially from that of the experts as estimated upon the basis of a value per telephone in use, limiting the number to those actually within the city.

There was no conflict in the testimony as to the gross earnings. Mr. Adams, vice-president and engineer of the company, testified that the total gross earnings for the year under consideration were $24,826.53. That statement was not contradicted by the defendant.

It is difficult to determine from the testimony what was the total amount of the expenses of the company for the year considered. The witnesses who testified upon this point were examined as to the items contained in a written statement and testified as to its contents, but the statement was not offered in evidence and does not appear in the record. The written sworn statement

of expenses and earnings for the six months ending April 30, 1907, submitted to the city council by complainant, was introduced in evidence without objection, and we shall take that as a basis for the expenses, as well as earnings, of complainant, assuming that for the year each item would be doubled. Accepting this statement, and omitting therefrom the two items of interest on the investment and renewal reserve for depreciation, we have left as expenses for the year a total of $12,352.24. The gross earnings were $25,031.32, and deducting the expenses therefrom, there remains the sum of $11,473.29 as a return on complainant's property, and for depreciation, if the latter be a proper matter of charge against the earnings. We thus have earnings in excess of the expenses for the year of over eleven and two-thirds per cent upon a property valuation of one hundred thousand dollars, and of over nine and one-third per cent on complainant's valuation of one hundred and twenty-five thousand dollars.

It remains for consideration whether complainant by its evidence met the requirement, upon which alone it was entitled to relief, of showing that the rates fixed by ordinance 926 were not reasonable, but were confiscatory in their character and effect.

Upon this question the right of complainant to deduct from the earnings, after allowing for all operating expenses, including maintenance and repairs of the property, a depreciation fund of four dollars per telephone per year, or about five per cent of the total value of the property, becomes of primary importance.

The theory of complainant is that before any return upon the investment can be considered, this depreciation fund to cover what was termed "invisible rot" must be taken from the earnings of the plant. Complainant's testimony upon this point is not at all satisfactory. It shows that no such fund had been provided until two years before the trial and even at the time of the trial no item of expense had ever been charged to

that fund. When the direct question was asked complainant's witness, an officer of the company, "How much have you in that fund now, do you know?" an objection was made by complainant that there was "no purpose to this cross-examination," and the subject was pursued no further. The inconsistency of complainant's theory of an accumulation of such a fund is shown by the fact that while the sum of five thousand dollars per year, for two years, had been set apart out of the earnings as a depreciation fund, the plant was valued as new and no deduction whatever was made for depreciation as represented by the amount on hand in that fund. It is obvious that upon that theory a time would be reached when the depreciation fund would amount to almost the total value of the plant and yet, in determining the reasonableness of the rates, the plant, which theoretically would be the victim of almost complete "invisible rot," would be valued as new in determining "the reasonable value of the property at the time it is being used for the public," while no corresponding credit would be given for the depreciation fund on hand.

It must be conceded that a wise and proper management of such a public utility as that under consideration requires and demands that a liberal sum should always be reserved from the earnings, whatever such fund may be designated, in order to keep the plant in a high degree of efficiency at all times and to provide for emergencies. For this reason the owner of the public utility is entitled to such rates as will produce sufficient revenue to operate the plant and meet such charges and, in addition, pay a reasonable return upon the value of the property in use.

The question remains, what would be a fair return upon the reasonable value of the plaintiff's property. This question as to what rate of return upon the investment will be considered reasonable or unreasonable by the courts has been considered in many cases. No fixed

and unvarying rule has been or can be announced upon the subject. Each case must, of necessity, depend upon the surrounding facts and circumstances. The prevailing rate of interest on money loaned, the hazard of the business, the life of the property used, the reliance upon the constancy of a return, which depends largely upon the existence or probability of competition, these, as well as many others, are proper matter for consideration. And in passing upon the question the fact should not be overlooked that no return whatever is guaranteed to the owner of the public utility. Upon that score it occupies no better ground than the owner of capital invested in a private enterprise. It follows that unless the maximum rate be placed at such a figure as is above the average rate of return upon reasonably safe investments in private ventures, capital will naturally turn to channels in which no maximum limit as to the return exists.

In this case complainant asserts its right to a net return, as a profit on its investment, of at least six per cent, and under the facts and circumstances in evidence we are of opinion that rates which would yield a less return upon complainant's property would be unreasonably low and could not be sustained. However, as the return on the investment, as shown by the evidence in this case, was in excess of nine and one-third per cent, even on complainant's valuation of the property, and over eleven and two-thirds per cent, on what we consider a reasonable value, we hold that the complainant failed to prove that it was entitled to the relief prayed for and that the court erred in holding that the rates were unreasonable and the ordinance void.

We have discussed the subject upon the assumption of rates for single line telephones and not for party line service. However, we do not mean to be understood as holding that the complainant did not have the right to install party line telephones and charge reasonable rates therefor. The Public Utilities Act granted to

cities the power to fix reasonable rates, but not to interfere with the right of the owner of the utility to make such use of its property as would not be inconsistent with the exercise of municipal authority in matters of local concern. We think the trial court rightly adjudged the ordinance invalid so far as it attempted to prohibit, under penalty, the use of party line telephones. But as that part of the ordinance fixing rates was entirely independent of the provision forbidding party lines, upon a well recognized principle of law, it can be upheld, although the party line provision be void. [State ex. inf. Major v. Kansas City, 233 Mo. 162; City of St. Louis v. Liessing, 190 Mo. 464; County Court v. Criswold, 58 Mo. 175, l. c. 199.]

We make the further observation suggested by the facts of this case, that when an ordinance is adopted prescribing rates of charge for the service of a public utility pursuant to legislative authority, it is attended with the same presumption of validity as in the case of other legislative acts, and when assailed on the ground that such rates are destructive of property rights in the utility affected, there should be no hesitancy on the part of the complainant in placing before the court all of the evidence and the best evidence within its control bearing upon the issues of the case. And when such an issue is raised the defendant should be granted full opportunity for examination of the books and property of the complainant, by experts of its own selection, in order that the court may have before it all of the material facts as presented from the standpoint of each of the opposing parties to the controversy.

For the reasons given the judgment is reversed and the cause remanded. All concur, except *Graves*, *J.*, who dissents, and *Valliant*, *C. J.*, not sitting.