## REDMOND PRINDIVILLE *et al.*

*v.*

## FRANCIS JACKSON *et al.*

1. CITY WATER WORKS—*a city may require citizens to repay cost of service pipe laid by it, before permitting its use by them.* A regulation of a board of public works of a city, which requires citizens desiring to use the water of the city flowing through the main pipes, to lay down at their own expense the necessary service pipe from their lots to the main pipes, is but just and reasonable, and in accordance with the principle upon which special assessments on account of special benefits are founded.

2. And where such a regulation exists, the fact that the city, at the time of laying the main pipes, and for the purpose of avoiding tearing up the paving of the street in future, lays service pipe from the main pipe to the lots abutting on the street, does not entitle any citizen to the free and unrestrained use of them, and the city has the right to require lot owners, wishing to use such service pipe, to refund to the city the cost of laying it, before they can do so.

APPEAL from the Circuit Court of Cook county; the Hon. W. W. FARWELL, Judge, presiding.

Mr. T. LYLE DICKEY, Mr. EGBERT JAMIESON, and Mr. RICHARD S. TUTHILL, for the appellants.

Messrs. JACKSON & SKINNER, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a petition for a *mandamus*, to the board of public works of the city of Chicago, to compel the board to issue a permit to the petitioners to connect water pipes under their lots with the water pipes of the city under North Dearborn street, in front of petitioners' lots.

The facts, as appear, are as follows: The city of Chicago, through its board of public works, before the paving of North Dearborn street, in said city, laid down a water main along said street, and in addition thereto, to obviate the

necessity of tearing up the pavement, by persons laying down service pipes thereafter, and to prevent the public inconvenience which would result therefrom, the board, in many instances, as in the case of these petitioners, caused service pipes to be laid down at the same time that the main pipe was, and paid therefor, looking to the property owners for reimbursement when, they should desire to use said service pipes.

The petitioners, desiring to use the service pipes laid down by the city, were called upon to reimburse to the city the actual cost to the city of laying down said service pipes, and the board refused them permission until reimbursement was made. They refused to make such reimbursement.

The *mandamus* applied for was, to compel the board to permit petitioners to make connection with said service pipes. To the answer of the defendants, setting out the facts, petitioners demurred, and the court sustained the demurrer and granted the writ of peremptory *mandamus* as prayed. From this decision defendants appeal.

The whole controversy is as to whether the petitioners have a right to use these service pipes without paying their cost.

The charter of the city of Chicago provides, that "the board of public works shall have exclusive charge and superintendence of the sewerage and water works of said city."

Another section provides, "that the board of public works shall have full power to regulate and control the manner of using the streets, alleys and highways and public places of the city, for the laying down of gas or water pipes and sewers, and determine the location thereof."

Here would seem to be power given to the board to provide rules and regulations for, and directions in detail as to the manner, etc., in which the citizen shall obtain water from the mains by means of service pipes, and the connecting of the same with the mains.

The answer alleges that the city is not legally bound to lay down any service pipe in connection with the main water

pipes, but that it is the duty of the owners of lots, if they wish to use the water of the city flowing through any main water pipe, to lay down, at their own expense, the necessary service pipes from their lots to such main water pipe, and to connect the service pipes with the main water pipe. And as the demurrer admits this, we may assume that the duty is one arising under the rules and regulations of the board of public works which prescribe the same.

Such a rule and regulation of the board would be but just and reasonable. It would be but requiring that persons, desiring to use the water of the city flowing through the mains, in consideration of the special private advantage they would enjoy over and above the general public, should pay something additional in the way of providing, at their own expense, the service pipes to connect with the mains. It would be the just principle upon which special assessments on account of special benefits are founded.

There being. then, such a rule and regulation of the board of public works, that the service pipes shall be provided by the property owners at their own expense—which we understand to be the fact, as well as there being a right to assume the existence of such a regulation under the admissions of the pleadings—the claim set up on the part of the petitioners is one not founded in justice or reason: It is the demand of a special privilege, a claim of exemption from petitioners' proportionate share of taxation, that the service pipes for their use shall be furnished at the expense of the city, while the service pipes for the use of other persons are provided by such persons themselves, at their own expense. If the petitioners have a right to use these service pipes without paying for them, in reason, every other citizen should have a right to demand of the city that it lay down service pipes for him, or pay him for the service pipes already laid down by him.

The rights and privileges enjoyed by the citizens should

be equal.  The claim of the petitioners is one which conflicts with the rule of equality and uniformity of taxation.

The right of the petitioners to lay down their own service pipes, and to connect them with the main water pipe, is not questioned, but conceded by the city.

Petitioners insist that, although it might not have been the duty of the city to lay down these service pipes, yet, having done so for the purpose of supplying the lots of petitioners with water, they are as much a part of the city water pipes as the main pipe, equally constructed and paid for out of the general taxes of the city, the petitioners' as well as others, and there being no power to collect the cost of these service pipes by special assessment on the abutting lot, that the lot owner has the right to make connection with the pipe which is the nearest to him in the street.

The fact of the service pipes having been laid down by the city, and belonging to the city, does not entitle any citizen to the free and unrestrained use of them.  They are exclusively under the charge and superintendence of the board of public works, to be used only in accordance with their reasonable rules and regulations.  It is the system, to lay down the main pipes only, at the general expense; to have the service pipes provided at individual expense.  And these service pipes were not laid down by the city in any departure from the system.  They were thus laid for the avoiding of the public inconvenience which would arise from the lot owners laying them down afterward.  It was still the design that they should be furnished by the lot owners, at their own expense, supposing that they, of course, would find it for their interest to avail themselves of the use of those laid by the city, upon the terms of paying their cost, rather than to lay down others. The service pipes were laid down for the use of the lots, only conditionally—upon the repayment of the cost.

We regard this rule and regulation as a just and reasonable one, and that the petitioners have no right to insist upon

having the use of the service pipes without complying with such regulation.

The judgment will be reversed and the cause remanded.

*Judgment reversed.*

Mr. JUSTICE DICKEY, having been of counsel for appellants, took no part in the consideration of this case. *

3.  MARRIAGE LICENSE—*proof as to age of parties to justify clerk in issuing.* In an action by a father against a county clerk for issuing a license for the marriage of a minor daughter of the plaintiff, the defendant testified that he had no knowledge of the age of the plaintiff's daughter previous to the time application was made to him for the license; that, when the application was made, he first examined the applicant, under oath, touching his own age and that of the daughter of plaintiff, and that he testified that he was 21 years of age and over, and

---

*This cause was submitted at the September term, 1875, but was not finally disposed of until after Mr. JUSTICE DICKEY came upon the Bench.