JOHN G. MALLON et al., Appellants, v. BOARD OF WATER COMMISSIONERS et al., Respondents.

Kansas City Court of Appeals, May 16, 1910.

1. **MUNICIPAL CORPORATIONS: Water Meters.** A Board of Water Commissioners charged with the duty of operating and maintaining waterworks belonging to a city, may require installation of meters at the expense of the consumer.

2. ————: ————. The Board of Water Commissioners charged with the duty of operating and maintaining waterworks may order the installation of water meters of a certain make or design.

3. **COMPETITIVE BIDS: Emergency Purchase.** Where the charter of a city requires all supplies and material to be purchased by a purchasing agent at a public letting or bids, but by way of exception provides that in emergencies the Board of Water Commissioners may purchase material not exceeding $500 in price without a public letting: *Held*, that the purchase from time to time of the ordinary stock of meters kept on hand to supply, the usual demand of consumers, is not authorized by the exception. That such purchases are not an emergency and must therefore be made by public competition.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell*, Judge.

REVERSED AND REMANDED (*with directions*).

*W. B. Dickinson* for appellants.

(1) The State has not the power to enter into business for the purpose of furnishing a commodity more economically to the consumer. Opinion of the Justices, 155 Mass. 598, 15 L. R. A. 809; Re Municipal Fuel Plants, 182 Mass. 605, 60 L. R. A. 592. (2) Municipal corporations can exercise only such powers as are: (1) expressly granted, (2) necessarily or fairly implied, (3) essential to its declared objects and pur·

poses; not simply convenient but indispensable. 1 Dillon's Mun. Corp. (4 Ed.), sec. 89, p. 145, sec. 92, p. 150, sec. 443, p. 512; vol. 2, p. 657, sec. 562; Albert v. Davis, 49 Neb. 579; 2 Beach Priv. Corp., sec. 834c; Steamship Co. v. Jersey City, 45 N. J. Law, 246; Water Works v. San Francisco, 82 Cal. 286; Dickinson v. Poughkeepsie, 65 N. Y. 325; Smith v. Birmingham, etc., Co., 104 Ala. 315; Huron, etc., Co. v. Huron, 7 S. D. 9, 30 L. R. A. 848; 1 Dillon's Mun. Corp. (4 Ed.), p. 512, sec. 443; Attorney General v. Boston, 123 Mass. 460; Railroad v. Oakland, 43 Cal. 502; Unionville v. Martin, 95 Mo. App. 28; Dougherty v. Excelsior Springs, 110 Mo. App. 623; Sedalia, etc., Co. v. Mercer, 48 Mo. App. 644; Kansas City ex rel. v. Swope, 74 Mo. 446; Knapp v. Kansas City, 48 Mo. App. 485. (3) Defendants say they buy, sell, set and repair meters to give the advantage to the consumer; we answer that the taxpayer pays for that advantage. Black v. Ross, 37 Mo. App. 250; Ranney v. Bader, 67 Mo. 476; Dillon's Mun. Corp. (4 Ed.), p. 1106, sec. 914.

*John T. Harding* and *Hunt C. Moore* for respondents.

(1) The ordinances of Kansas City providing for the use of water through meters and vesting in the city the exclusive power and authority to install, set, repair, supervise and keep in serviceable condition all meters in use in the city, is a reasonable and valid exercise of the city's powers in the management and operation of its waterworks system. 30 Am. and Eng. Ency. of Law (2 Ed.), p. 420; Wagner v. Rock Island, 146 Ill. 139, 21 L. R. A. 519, 34 N. E. 545; State ex rel. v. Kent, 98 Mo. App. 287; Bullmaster v. St. Joseph, 70 Mo. App. 64; Booth v. Fulton, 85 Mo. App. 16; 1 Dillon on Mun. Corp. (4 Ed.), sec. 22. (2) The city has the right and power to furnish the meter, install and set it and charge and collect from the consumer

the cost of the meter as well as the expense which it , · pays for the installation and the setting of the same. Stocking Co. v. Lowell, 199 Mass. 118, 18 L. R. A., 746, 85 N. E. 90; Cox v. Fur. Factory, 75 S. C. 48, 54 S. E. 830.

ELLISON, J.—Plaintiffs, as taxpayers of Kansas City, Missouri, filed their bill against defendants, who are the board of water commissioners, the purchasing agent, the treasurer and collector of water rates of such city, whereby they seek to prevent defendants, or either of them, in their respective official capacities, from purchasing water meters to be installed in residences of water consumers in said city. The prayer of the bill reads as follows:

"Wherefore plaintiffs pray that the defendants be enjoined and restrained from buying water meters for the purpose of re-selling the same and from paying for said water meters out of the funds of the water department of Kansas City or out of the funds of defendant Kansas City, or in any manner engaging in the business of buying and selling water meters on account of Kansas City, and that defendants be enjoined and restrained from selling any water meters or other property owned by Kansas City except at public auction, and that the defendants be enjoined and restrained from employing, on behalf of Kansas City, any employees for the purpose of setting meters or repairing meters not owned by Kansas City and from paying the wages or salary of any such employees out of the funds of the water department of Kansas City, and for all other equitable and proper relief which the plaintiffs and all others similarly situated may be entitled to receive."

The controversy between the parties covers much ground, but in a general way it may be said to involve the right of the city in the matter of buying water

meters and in selling and installing them in residences. Plaintiffs charge that the purchasing agent purchases the meters in large quantities without competitive bidding and thereby substitutes private contracts for the public competition required by the charter. They deny his right to do so. They likewise deny the right of the city or its employees to set or repair the meters.

It is provided in section 2 of article 11 of the charter that it shall be the duty of the board of water commissioners "to maintain and operate a waterworks system" to supply the city and its inhabitants with water. Section 4, of the same article, is as follows:

"The contracts for the doing of all work and the furnishing of all materials and supplies for the waterworks and fire department systems shall be let by the Board of Fire and Water Commissioners, subject to the provisions of article 4 of this charter relating to the city purchasing agent, except that in cases of emergency when the purchasing agent is unable to furnish materials, machinery, tools and supplies immediately necessary for the use of said board, the same may be purchased by the board irrespective of the purchasing agent and without competitive bidding, when said purchases do not involve an expenditure of more than five hundred dollars."

Turning to article 4, referred to in the section just quoted, we find, in section 24, it is directed that the purchasing agent "shall, subject to such rules and regulations as may be prescribed by ordinance, or the terms of this charter, purchase all goods, supplies, machinery and materials, and all things whatsoever required by the city or any department thereof, except such purchases as may, by this charter, be authorized to be made by others."

Section 14 of article 18 requires that "all contracts made by the city or any board, department or officer thereof, and all purchases of supplies or other property for the city, except as in this charter other-

wise provided, shall be let by contract to the lowest and best bidder as shall be prescribed by ordinance."

We do not doubt the power of the city through the board of water commissioners to select water meters and install them in residences, at the expense of the consumer. It is a matter of common knowledge that where water is supplied without limit, at a stated price, many consumers waste it. The knowledge that the quantity used will not affect the price begets indifference and encourages negligence. Nothing affords a better check on this fault of a large part of the human family than self interest. So, therefore, the installation of devices through which it may be known what quantity of water a person uses, and whereby he may be required to pay in proportion to the quantity, are considered to be reasonable regulations. The good effect of such regulation is double; it leads to the payment by each person for the quantity he consumes, and it protects the general supply. [Shaw Stocking Co. v. City of Lowell, 199 Mass. 118; State ex rel. v. Gosnell, 116 Wis. 606; Cooper v. City of Goodland (Cal.), 102 Pac. 244; Powell v. Duluth, 91 Minn. 53; Gordon v. Doran, 100 Minn. 343; Page and Jones on Taxation, sec. 353.]

But plaintiffs insist that notwithstanding the authority of the board of water commissioners to require the use of meters, it has no right to select one meter to the exclusion of any other kind preferred by the consumer. We think it has. Necessarily the meters should be inspected and lists of them should be kept and regular readings had. It seems to us that a number of kinds, some good, some excellent and others bad, would lead to confusion and uncertainty in results to be had from them. It appears clear that uniformity is a reasonable requirement and that the board has a right to prescribe that a certain kind of meter be installed at the expense of the consumer. [State ex rel. v. Goodfellow, 1 Mo. App. 495.]

Possibly this discretionary power will, at times, be abused in some of the many ways that wrong doing seeks; but if so, relief could be had through the courts.

Finally plaintiffs insist that if meters are to be supplied by the board of water commissioners, they should be bought by the purchasing agent by an open competitive bid. The record shows that a supply of meters is kept up by purchases from time to time through the purchasing agent, on orders to do so by the board; and that whenever a meter is needed, the proper officer obtains it from the purchasing agent and has it installed in the residence of the consumer, charging him the cost price of the meter and for the work of putting it in. It further appears that no order is made by the board for the purchase of more than $500 worth at any one time, and that the purchases are not made by competitive bidding.

It will be noticed from the terms of section 24 of article 4, above quoted from, that the purchasing agent is to purchase all the material and supplies needed for the city except such purchases as the charter authorizes others to make. And, in that connection, it will be observed that section 4 of article 11 authorizes the board itself, in cases of emergency, to purchase material or supplies, in sums of five hundred dollars or less, without doing so through the purchasing agent, and without competitive bidding.

Then, as supplementing these provisions, it is declared by section 14 of article 18, above set out, that all material and supplies purchased by any board, department or officer, "except as in this charter otherwise provided, shall be let by contract to the lowest and best bidder."

This last provision of the charter is mandatory that in the purchase of material or supplies there shall be opportunity offered by the purchasing agent for open and competitive bidding by those desiring to sell (Galbreath v. Newton, 30 Mo. App. 380; 49 Mo. App. 117),

except in emergencies when the board deems it necessary to purchase material or supplies in a sum not exceeding five hundred dollars, in which case, under the terms of section 4, article 11, the purchase is to be made by the board without regard to the purchasing agent and without public competition or letting. In all other cases the purchase is made by the purchasing agent on competitive bidding.

It therefore only remains to consider whether the purchase of meters, as made, comes within the meaning of the charter as to emergencies. We think it clear it does not. In the first place, the purchases here complained of were made by the purchasing agent when it is no part of his duty to make emergency purchases. And the manner of these purchases shows they could not have been an emergency. That word signifies some sudden or unexpected necessity requiring immediate, or, at least, quick action, whereas the meter supplies were obtained without the presence of such a situation. They were known to be in constant demand and were needed, with approximately correct knowledge in advance in what quantity. To call the well-known future need of water meters an emergency, would be trifling with the words of the charter; and from time to time, continuously, to make orders for meters by private purchase, is clearly a violation of the plain terms of the law requiring public competition.

In view of the foregoing, we will sustain plaintiffs' bill in so far as it seeks to restrain the board of water commissioners and the purchasing agent, or either of them, from making ordinary purchases of supplies of water meters by private purchase for uses which could be reasonably known or expected beforehand.

The judgment will therefore be reversed and the cause remanded with directions to render a decree accordingly. All concur.