## CITY OF JOPLIN, Appellant, v. HERBERT R. WHEELER, Respondent.

### Springfield Court of Appeals, July 29, 1913.

1. **WATER COMPANIES: Rates: State's Power to Regulate.** The State has power to regulate rates charged by water companies operating under a franchise granted either by the State or a municipal corporation.

2. **———: State's Power to Regulate Rates: May be Delegated.** Such power may be delegated by the State, at least in part, to municipal corporations to be exercised over public service corporations chartered by them and operating within their limits.

3. **———: Ordinances: Requiring Installation and Repair of Pipes: Not a Rate Regulation.** An ordinance merely requiring a water company to install and keep in repair, at its own expense, all service pipes for carrying water from the mains to the property line is not valid as being an ordinance regulating water rates.

4. **———: Rates: Proper Basis of.** The fair basis on which to fix water rates is, so far as practical, to charge for the amount of water used.

5. ORDINANCES: Rate Regulations: Must be Reasonable. A rate regulation ordinance must allow a water company operating thereunder a reasonable profit on the investment.

6. ———: ———: Must be Fair and Equal. An ordinance requiring a water company to bear the expense of installing and keeping in repair the service pipes from the water mains to the property line, if intended as an ordinance to fix rates, is *held* to be an unfair and unequal method of fixing rates both to the consumer and to the company.

7. WATER COMPANIES: Franchises: Obligations Under: Subsequent Ordinances. If a water company, under its franchise ordinance, is required to install and maintain service pipes from the water mains to the property line, a subsequent ordinance providing a punishment for failure of the company so to do, is valid, as a means of enforcing the obligations; such an ordinance however cannot create that obligation if outside of the franchise.

8. STREETS: Authority of City Over. Under police power a city has authority to regulate the use of its streets, but it has not the power to compel the use thereof.

9. WATER COMPANIES: Regulation of: Franchise: Subsequent Ordinances. A city has power to enforce reasonable ordinances regulating the performance by a water company of its duties to the city under the water company's franchise and providing for the proper and safe use of the city's streets by the company operating under such franchise. But such an ordinance cannot impose new duties and to be valid it must be one to supervise the manner of carrying out the franchise or enforce the performance, on the part of the company, of duties already imposed by the franchise.

10. MUNICIPAL CORPORATIONS: Ordinances: Exceeding Authority. A city has no power to create a civil liability from one citizen to another by municipal ordinance nor can it relieve one citizen from a liability by imposing it on another.

11. FRANCHISES: Ordinances: Construction. In construing an ordinance or franchise, if ambiguity exists, the courts, as in any other contract, will adopt that construction which the parties thereto have placed upon it themselves by their acts and conduct.

12. CORPORATIONS: Public Service Corporations: May Make Certain Regulations. Public service corporations have the right to make reasonable regulations concerning matters connected with their service to the public not covered by public laws or the franchise ordinance.

Appeal from Jasper County Circuit Court, Division No.
Two.—*Hon. D. E. Blair*, Judge.

AFFIRMED.

*R. A. Pearson* for appellant.

(1)   The city has full power and authority "to
exercise exclusive control over its streets and alleys."
Secs. 10294, 9227 and 9230, R. S. 1909; Sec. 9254, Sess.
Acts 1911 of Missouri, p. 337.   (2)   Under its dele-
gated authority and inherent police power the city may
regulate and control the uses of its streets, below the
surface and above.   Crumpler v. City of Vicksburg,
29 Miss. 214, 10 Am. & Eng. Cas. 1098; State ex rel. v.
Murphy, 134 Mo. 560; City of Plattsburg v. Telephone
Co., 88 Mo. App. 311; Kansas City v. Richardson, 90
Mo. App. 450; City of Lancaster v. Briggs, 118 Mo.
App. 570; Ferrenbach v. Turner, 86 Mo. 416; State ex
rel. v. St. Louis, 145 Mo. 551; 28 Cyc. 851.   (3)   The
right of the water company to the use of the street for
a public service carries with it the correlative obliga-
tion to exercise such right to the extent of the grant
and the franchise limits are plainly the limits of the
street itself.   20 Cyc. 1159 and 1160;   30 Am. & Eng.
Ency. 426 and 439; Vanderburg v. Gas Co., 126 Mo.
App. 606; State ex rel. v. Water Co., 52 Mo. App. 312;
Water Co. v. Standley, 7 Ida. 155, 61 Pac. 518; Hatch
v. Consumers Co., 17 Ida., 204, 104 Pac. 670.   (4)   The
rights and liability as between the water company and
a private party are not the measure of the rights of a
water company as against the legislative power of the
city, nor reasons of an appellate court in the one case
precedents in another where a different state of facts
are at issue.   State ex rel. v. Railroad, 240 Mo. 53;
State ex rel. v. St. Louis, 241 Mo. 231.   (5)   .The city
could change the rates of the ordinance under its charter
power.   City of St. Louis v. Bell. Co., 96 Mo. 623;

State ex rel. v. Telephone Co., 189 Mo. 83; Knoxville v. Water Co., 189 U. S. 434; Water Co. v. Freeport, 180 U. S. 581, 45· L. Ed. 679; Water Co. v. Fergus, 180 U. S. 624, 45 L. Ed. 702; Dillon Municipal Corporations (4 Ed.), sec. 97. (6) Under the fixed schedule of rates the water company is without right to charge for service pipes; and the ordinance is within the scope of the city's delegated power to regulate the charges for the water company's service. Sec. 9568, R. S. 1909; St. Louis v. Tel. Co., 96 Mo. 623; City of St. Charles v. Elsner, 155 Mo. 671; Fisher v. Water Co., 151 Mo. App. 536; City of Pine Bluff v. Toney, 96 Ark. 345, 131 S. W. 680; Water Co. v. El Paso, 112 S. W. 816; Cleveland v. Waterworks Co., 125 Pac. 769; State v. Water Co., 127 Pac. 304.

*Spencer, Grayston & Spencer* for respondent.

(1) After granting a franchise which authorized the water company to require the consumer to install and maintain service pipes at his own expense, the city could not impose that burden upon the water company. McQuillin Municipal Ordinances, sec. 239. (2) The city could not create a liability from one citizen to another. Becker v. Schute, 85 Mo. App. 62. (3) Ordinance No. 3819 which undertakes to compel water and gas companies to bear the expense of installing and maintaining service pipes does not even purport to fix rates and is not referable to the power given cities to fix rates at which water or gas may be sold. R: S. 1909, Secs. 9568 and 9569. Ex parte Goodrich, 160 Cal. 410, 117 Pac. 451, 26 Am. & Eng. Ann. Cas. 56; Telephone Co. v. City of Carthage, 235 Mo. 667 and 668. (4) While there is a conflict in the decisions of the various States as to who should install and maintain service pipes, in the absence of express franchise provisions determining the question, Missouri has taken

173 Mo. App. 38

Joplin v. Wheeler.

its place with those which hold that it is more equitable to require each consumer to bear the expense incident to his own peculiar requirements than ·to indirectly distribute the expense among all the consumers without reference to the requirements of each consumer. Fisher v. Water Co., 151 Mo. App. 530; Franke v. Water Co., 88 Ky. 467; Gleason v. Waukesha Co., 103 Wis. 225; State v. Gosnell, 93 N. W. (Wis.) 542, 116 Wis. 606, 61 R. R. A. 33; Prindiville v. Jackson, 79 Ill. 337; Donavan v. Oswego, 86 N. Y. S. 155; Warren v. Chicago, 118 Ill. 329. (5) The service pipe in question was furnished and installed by the owner of the premises and was the property of the owner of ·said premises. Mulrooney v. Obear, 171 Mo. 613; Philbrick v. Ewing, 97 Mass. 133. (6) The water company had a right to make reasonable rules concerning matters not covered by the franchise ordinances. The franchise contract gave the water company the right to make the particular rule under which this service pipe was constructed by the owner. 30 Am. & Eng. Ency. of Law, 418; 1 Wyman on Public Service Corporations, sec. 417; State v. Goodfellow, 1 Mo. App. 495; ordinance 79, secs. 20 and 15.

STURGIS, J.—This is an appeal from a judgment of the circuit court of Jasper county, Missouri, acquitting and discharging the defendant under a prosecution by the city of Joplin for a violation of an ordinance of that city entitled, "An ordinance requiring all corporations holding franchises in the city of Joplin, for the distribution of gas and water, to bear the expense of installing and keeping in repair service pipes from the mains of such companies to property line." The case was submitted to the trial court on an agreed statement of facts substantially as follows: That the defendant was at all times mentioned in the information filed in this cause, superintendent of the Joplin Waterworks Company; that the Joplin Waterworks Company

was at said times the owner of and operating a system
of waterworks in said city, and engaged in the business
of supplying water to the said city for fire extinguish-
ment and other purposes, and to the residents and in-
habitants of said city for domestic purposes, pursuant
to the ordinances hereinafter named; that, in so doing,
the said water company owned and maintained a plant,
machinery and main pipes for the purpose of pumping
and distributing water to its customers; that the said
water company, by its rules and regulations, required
its customers to construct and maintain service pipes
from its mains, the said company making the tap, or
connection, at the main, and charging the customer the
expense of making the connection; that the franchise
under which the said company was operating results
from ordinance No. 2184, approved June 30, 1904, and
ordinance No. 79, approved December 21, 1880, which
last mentioned ordinance was made a part of said first
mentioned ordinance by reference thereto and by
adoption of such parts of the prior ordinance as are not
in conflict or inconsistent with the ordinance last
enacted; that the franchise so resulting from both said
ordinances was valid, and that the reference in the
ordinance last enacted to the ordinance first enacted
is also valid and effective; that on March 27, 1906, a
tap was made for the consumer at 916 Taylor avenue
in said city, and service pipes constructed from the
main in said Taylor avenue to the house at said num-
ber, the tap being made by the said water company and
paid for by the owner of said premises, and the said
service pipe having been furnished, placed and con-
structed by the said owner of said premises, by and
in purusance of the rules and requirements of said water
company; that the said Taylor avenue was and is a
public street in the city of Joplin, in Jasper county,
Missouri, the said city being now, and having been
since about 1886, a city of the third class, organized
under the general laws of the State; that on March 1,

1910, the said city enacted ordinance No. 3819, entitled, "An ordinance requiring all corporations holding franchises in the city of Joplin for the distribution of gas and water to bear the expense of installing and keeping in repair service pipes from the mains of such companies to property line;" that some time prior to April 19, 1912, a leak appeared in the said service pipe between the lot, or property line, and the water company's main, in the roadway and near the curb line of said street, causing a soft place in the street, which the defendant admits constituted a defect therein; that shortly after the leak appeared, the tenant of the said property notified defendant as superintendent of the water company of the existence of the leak and asked that the same be repaired by the water company; that the notice was sufficient as to time and form, but the defendant declined to repair the same, taking the position that it was not the duty of the water company to repair the pipe; that the ordinances mentioned shall be considered as a part of this agreed statement of facts.

The ordinances referred to are in evidence and show that in 1880 the city of Joplin granted to one Paul B. Perkins, his associates and assigns, a franchise to construct and operate a waterworks system to supply the city and its inhabitants with water at a schedule of rates therein prescribed. This franchise was for twenty years. The Joplin Waterworks Company succeeded to his rights under this ordinance and, in 1904, the city, by a second or supplementary ordinance, extended this franchise to that company for another period of twenty years with a new and somewhat lower schedule of water rates. Treating these ordinances as one and as constituting defendant's franchise contract, we find that the city contracted with said company for supplying with water the streets, alleys and public places of the city and its inhabitants. The water company is authorized to construct and operate a system of water-

works in and adjacent to the city and to use the streets, alleys, squares and public places in the city so far as necessary to lay water pipes and maintain the necessary appliances for supplying water to the city and its inhabitants and to extend and repair the water pipes for conveying and distributing the water. The city rented of the water company a certain number of fire hydrants at a stipulated price, with a provision for additional fire hydrants when ordered by the city, "the cost of said fire hydrants, together with the pipes connecting it with the mains and putting it in shape, to be paid by the city." The city was given the privilege of using water for flushing its sewer system up to a certain amount and above that amount to be paid for by the city, "the connections between the water company's mains and the flush tanks to be paid for by the city." Other provisions of the ordinance will be noted later in this opinion.

The ordinance of the city for a violation of which the defendant is being prosecuted was enacted in March, 1910, and provides the following: "All corporations now holding or which may hereafter hold franchises in the city of Joplin, Missouri, giving authority to such company to distribute gas and water throughout such city, be and are hereby required to install and keep in repair at their own expense all service pipes for the conveyance of gas and water from the mains of such company to the property line, of all consumers desiring to connect with the mains of said company. [Sec. 2.] Any person being the president, vice-president, secretary, director or agent, for any such corporation, being the owner and holder of any such franchise, who shall neglect, refuse and fail to comply with the provisions of this ordinance, shall be deemed guilty of misdemeanor, and on conviction thereof, shall be punished by a fine of not less than $10 and not more than $100 for each offense."

The question of defendant's guilt is wholly dependent upon the validity of this ordinance. The plaintiff seeks to uphold its validity on two grounds: (1) the right of the city to regulate the rates to be charged for water by the water company; and (2) the police power of the city (a) over its streets, and (b) the right of the city to enact reasonable rules and regulations touching the discharge of the water company's duty to the city and public under its franchise.

That the State has the general power to regulate rates to be charged by public service corporations like this one, operating under a franchise granted either by the State or a municipal corporation, cannot be questioned. [City of St. Louis v. Bell Tel. Co., 96 Mo. 623, 10 S. W. 197; State ex rel. v. Telephone Co., 189 Mo. 83, 99, 88 S. W. 41.]' These authorities also hold that such power may be delegated by the State, in part at least, to municipal corporations to be exercised over public service corporations chartered by and operating within their limits. This seems to have been accomplished by the legislative Act of 1907, p. 119, now section 9568, et seq., Revised Statutes 1909. It may be seriously questioned whether this act was intended to and does apply to rates fixed by an ordinance which is a contract between the city and water company as well as a franchise to such company to use its streets for a quasi public purpose and, if it does so apply, whether it would not be void under the constitutional inhibition as impairing the obligations of such contract. This court will not attempt to discuss or settle that question. It is not necessary to do so, as it seems plain that the ordinance in question merely requiring the water company to install and keep in repair at its own expense all service pipes for conveying water from the mains to the property line is not an ordinance regulating water rates. It is only indirectly and in the remotest degree that this ordinance can be said to affect rates. The appellant's reasoning is that

as the cost of installing and maintaining these service pipes from the mains to the property line is an expense to the water consumer, any ordinance cutting off or reducing this expense to anyone has the effect of reducing the rate he pays for water. If that be the test, then an ordinance requiring most any kind of a bonus from the water company to the consumer would be authorized as regulating rates. If that be the purpose of this ordinance, why stop at the property line? It would save still more expense to the consumer to require the company to install and maintain all the pipes leading into the building and to the faucet where the water is to be drawn off. It would be no answer to this to say that the company's franchise only extended to the street limit, because that is referring the question back to the terms of the ordinance contract and, while that may limit the company's obligation, if there be such obligation to install and maintain such pipe lines, yet that has nothing to do with the rate fixing power. The only limit on that power is that the rates be left reasonable and be not changed oftener than every two years.

In Ex parte Goodrich, 160 Cal. 410, 117 Pac. 451, 25 Am. & Eng. Ann. Cas. 56, the city of Los Angeles had exercised its power to fix rates to be charged by the electric light company, by fixing a schedule of rates to be charged by such companies at a time when it was the custom of all companies to furnish lamps free of charge. After the schedule of rates had been fixed, the company, represented by the relator, Goodrich, adopted a rule by which it charged for the lamps. The city met this with a new ordinance by which it sought to *compel* the electric light company to furnish lamps free of charge. Goodrich was arrested for violation of the last named ordinance and he invoked the writ of *habeas corpus*. The city sought to sustain its ordinance upon the theory that it was a rate-fixing ordinance supplementary to the prior rate-fixing ordinance,

but the California Supreme Court held that the ordinance did not fix rates and did not even purport so to do. We think this case is in point, although the lamps which the city undertook to require the electric light company to furnish were to be placed outside of the franchise limits. Appellant's argument that this ordinance requiring water companies to bear the service pipe expense may be sustained as an exercise of the rate-fixing power, reduced to its last analysis, is that any ordinance enacted by a council which would affect the net income of a public service corporation is a rate-fixing ordinance. Upon that theory, the city could compel the water company to pave a street upon which it has pipes, for that would be within the franchise limit and would save the consumer a special tax bill. Our own Supreme Court, in dealing with this Act of 1907, has held that a city could not prohibit party telephone lines (Home Telephone Co. v. City of Carthage, 235 Mo. 644, 667-8, 139 S. W. 547), although single lines to all customers may give better service to such customers and increase the company's expense.

This method of fixing rates, if such is the intent of the ordinance, is certainly very unfair and unequal, both to the water consumer and the company. [Prindiville v. Jackson, 79 Ill. 337.] The recognized fair basis on which to fix water rates is, so far as practical, to charge for the amount of water used. Neither the number of pipes, the length thereof, nor the expense of installation and repairing bears any relation whatever to the quantity of water consumed. A customer who has a large hotel of many rooms uses but one service pipe and it costs him no more to install and maintain that service pipe in the street than it costs the owner of a small one-story building. It costs no more to run a service pipe from the street main to a building in which there is a laundry or public bathhouse, or some other business in which a large quantity of water is used, than it does to install and maintain a service pipe from

the street main to a small private residence. Inasmuch as in any rate-regulating ordinance a reasonable profit on the investment must be allowed, this expense to the operating company must be ultimately paid by the consumer. This is the line of argument used by the Kansas City Court of Appeals in Fisher v. Water Company, 151 Mo. App. 530, 132 S. W. 288.

The appellant to support its contention that this ordinance is valid under the power of the city to regulate rates cites a line of cases where the company construed the franchise ordinance, under which the company is operating, as imposing on the company the obligation to install and maintain service pipes from the water mains to the property line, and holding that the company can not in such cases evade the ordinance rate by shifting this burden on the consumer. [Pine Bluff Corporation v. Toney, 131 S. W. (Ark.) 680; International Water Co. v. City of El Paso, 112 S. W. (Texas) 816; Cleveland v. Waterworks Co., 125 Pac. (Wash.) 769.] Whether this obligation rests under the ordinance in question as interpreted under the laws of this State on the water company or the consumer is the very question now at issue, and, if it be found that such obligation rests on the consumer, then these cases are certainly no authority for holding that the city under the guise of regulating rates can shift the same to the water company. If it be found that the obligation already rests on the company under its franchise ordinance, then, as held in the Pine Bluff case, supra, an ordinance such as this one might be used to enforce that obligation, but it cannot be used both to create and to enforce such obligation. This point must therefore be ruled against appellant.

On the proposition that the ordinance is a valid exercise of the police power of the city to regulate and protect the use of its streets, it will be noted that the ordinance in question does not disclose on its face any such purpose. That the city has ample power in this

respect is not questioned. The ordinance, however on its face, has one object only and that is to designate at whose expense this work will be done. There is nothing regu- lative about it, either as to the manner of doing the work or as to any precautions to be taken before, during the time of, or after doing the work, in order to protect the street or safeguard its use by the public. The failure of the company to do the required work *at its expense* makes it guilty of a violation of the ordinance, regardless of how carefully the work is done and even if the street is kept and left in a better and safer condi- tion than before. Ordinarily ordinances having for their object the maintenance, safety and regulation of streets are directed against any and every one who uses the streets either in general or for a particular purpose, and, if this is the object and purpose of the ordinance, why was one not enacted so as to be obliga- tory on whoever used the street for this purpose, whether the company or the consumer? The incident of the street becoming in bad condition in this particular instance was the result of the service pipe not being repaired at all rather than not being repaired by the water company *at its expense.*

Certainly the city cannot compel anyone to use its streets for any special purpose when such person is not seeking the privilege or under obligation to do so. An ordinance requiring a designated person to use the streets in a certain manner or for a certain purpose in order to be valid must be based on the fact that such person is then seeking some special privilege in using the street, or has already taken on himself the obliga- tion to do so, and the requirements imposed are neces- sarily or reasonably connected with or grown out of such granted use. The power of the city is to *regulate* the use of its streets and not to compel such use. The ordinance in question seeks to compel the water com- pany, against its will, to use its streets for the purpose of constructing and maintaining lateral service pipes

for the use of water consumers and does not attempt to regulate such use. If the water company was already under its franchise obligated to install and maintain these service pipes, then there is no need of this ordinance; and, while the city could properly regulate the manner of using its streets for such purpose by one desiring or obligated to do so, such is not this ordinance.

In this connection we will also consider the second phase of the police power—the right of the city to enforce reasonable ordinances regulating the performance by the water company of its duty to the city and its inhabitants under its franchise, and the proper and safe use of its streets in so doing. That the city has such right is unquestionable, (State ex rel. v. St. Louis, 145 Mo. 551, 576, 46 S. W. 981; Belcher Sugar Refining Co. v. Elevator Co., 101 Mo. 192, 206, 13 S. W. 822; 30 Ency. of Law, [2 Ed.] 415), and if the ordinance can be upheld at all it must be on this theory. The very statement of the proposition, however, suggests and implies that an ordinance to be valid for this purpose must be one to regulate or supervise the manner and means or to enforce the performance by public service corporations of its duties and obligations to the city and its inhabitants, and which duties and obligations are those *already imposed by* and growing out of its *franchise contract*. Such ordinances cannot create and impose new duties or powers but are dependent for their validity on the fact that such duties and powers already exist and are imp: sed by the franchise contract and only need to be regulated or enforced. This doctrine was well considered and the law declared in Ex parte Goodrich, 160 Cal. 410, 117 Pac. 451, 26 Am. & Eng. Ann. Cas. 56, where the court said: "Over these matters of safety and convenience the city council had the unquestioned power to pass regulatory ordinances. . . . The primary question is not at all one of reasonableness, but one of legislative power. Only after the *existence of the power is shown* does the

question of the reasonableness of its exercise arise. . . The power and the limitations upon the power of the council in dealing with these public service corporations has been indicated.. That power is a power of supervisory control over the business, the administration, and the functions of the corporation in the latter's dealings with the public. Beyond these matters the city council cannot go. . . . The city council can no more compel a public service corporation to do or abstain from doing anything not pertaining to the public service itself than it can compel a private individual; for, outside of its public functions, the corporation is a private corporation. . . . No case cited by respondent in anywise supports his contention that the Legislature may regulate or control a public service corporation in its private affairs as distinguished from its public duties, or that it may compel such a corporation to do or abstain from doing anything not pertinent to its public functions as a condition precedent to its right to perform those functions. One and all the cases are addressed to the familiar principle herein repeatedly announced, that the Legislature may pass reasonable rules and regulations touching the performance of these public functions."

It has been repeatedly ruled in this State that a city has no power by municipal ordinance to create a civil liability from one citizen to another, nor to relieve one citizen from that liability by imposing it on another. [Norton v. City of St. Louis, 97 Mo. 537, 542, 11 S. W. 242; Sanders v. Railroad, 147 Mo. 411, 426, 49 S. W. 855; Becker v. Schutte, 85 Mo. App. 57, 62; City of St. Louis v. Conn. Ins. Co., 107 Mo. 92, 96, 17 S. W. 637.] The application of this doctrine to cases based on negligence has led to differences of opinions and conflicting decisions (Sluder v. Transit Co., 189 Mo. 107, 135, 88 S. W. 648), and the dissenting opinion of Judge MARSHALL in that case, but as applied to contractual and similar obligations and liabilities it has never been

questioned. [See also State ex rel. v. Associated Press, 159 Mo. 410, 60 S. W. 91.] The city's lack of power to impose new obligations not reasonably within the duty imposed on public service corporations is the basis of holding that a telephone company cannot be compelled to put in all single instead of using party lines. [Home Telephone Co. v. City of Carthage, 235 Mo. 644, 667-8, 139 S. W. 547.]

The validity of this ordinance must therefore be solved by a determination of whether the franchise ordinance imposes upon the water company or the consumer the obligation to install and maintain the service pipes connecting the water mains to the property line. The water company contends that it has discharged its whole duty under the ordinance in furnishing water in its mains and that the obligation rests on the consumer to install and maintain service pipes from the water mains to the place where the water is drawn off. The city argues that the franchise of the company is coextensive with the entire street and the company's obligation is to deliver water at the property line.

It is obvious that the purpose for which the waterworks system is maintained, to-wit, the supplying of the inhabitants of the city with water, can be accomplished by either method. Unless we should say that the supplying of water to the inhabitants necessarily means delivering it to the consumer at the very place of consumption, a position not taken by any court and not contended for here, then the question of who should connect the water mains by service pipes with the private property was properly a matter of contract between the city and water company and should have been embodied in the franchise ordinance. That the installation and maintenance of such service pipes to the property line is not one of the necessary incidents and obligations growing out of the rights and duties of the water company to supply water to the inhabitants of the city is shown by the fact that this company has

.for twenty-five years discharged its duties without so doing.

Turning to the ordinance contract in question, we think a reasonable construction of it taken as a whole only imposes on the water company the duty and obligation to supply water in the water mains and to be laid in the streets, alleys, etc., of the city, and that it plainly implies that the consumer shall construct and maintain the service pipes for the mains to whatever place he desires to draw off the water. In addition to the provisions heretofore noticed, requiring the city to bear the expense of connecting the mains with any additional fire hydrants ordered and with the flush tanks of the sewers, we find that the original ordinance, providing for the construction of the system, provides that the total distribution of pipes within the city limits shall make a total length of nine miles of pipes and shall include sufficient water service from the southern limits of the city to the northern limits and to certain smelting works, on the outskirts thereof; that all of said pipes shall be of sufficient capacity to furnish water for putting out fires and for supplying water for domestic and manufacturing purposes; the city is to locate the pipes and fire hydrants thereon; the pipes are to be fitted with valves so as to divide the same into separate sections, each of which can, in case of accident, be shut off from the others. It can hardly be contended but that the pipes above mentioned and wherever mentioned throughout the ordinance unmistakably refer to water mains only.

Section 15 of the ordinance provides that any person or persons engaged in the business of plumbing or fitting premises with service pipes shall have the right to tap and make proper connections with the water mains upon giving bond to the water company conditioned upon the proper and safe execution of such plumbing and fitting and of the pipes and materials used therein. The ordinance in thus speaking of

plumbers fitting premises with service pipes and giving them the right to tap and make connections with the water mains clearly implies that persons other than the employees of the water company shall do this work. And why should a bond be required to the owner of the waterworks conditioned upon the proper and safe execution of the work of plumbing and fitting such service pipes to the mains if the same is required to be done by the water company by its own employees and at its expense? Section 20 provides that the water company shall have the right to make needful rules and regulations for the tapping of water pipes and for the proper sizes of service pipes—a provision wholly useless and inappropriate to the doing of such work by the water company.

The case of International Water Company v. El Paso, 112 S. W. 816, relied on by appellant, concedes that if the franchise ordinance "by fair implication" relieves the water company of this obligation and imposes it on the consumer, the courts will so construe it. The court there said: "We think, in order for respondent to be able to claim immunity for this consequence, there would have to be some provision in the grant or contract which unmistakably, or at least by fair implication, taking into consideration all the provisions of the contract bearing on the subject, would relieve it." The ordinance discussed in Crumpler v. City of Vicksburg, 89 Miss. 214, 10 Am. & Eng. Ann. Cas. 1098, plainly refers only to the repair of a water main and such pipes as belong to the water company, and not to service pipes put in and owned by private consumers. Other cases relied on by plaintiff will be found to turn on the construction given by the courts to the particular ordinance then in question as to who is by the ordinance contract obligated to put in and maintain the service pipes connecting with the mains.

If we grant that this matter is a proper subject of contract and that the present ordinance contract is am-

biguous and leaves it doubtful as to the obligations of the parties in this respect, then we see no reason why we should not apply the familiar rule of law that the courts will adopt that construction of the contract which the parties themselves by their acts and conduct have placed upon it. [St. Louis Gaslight Co. v. St. Louis, 46 Mo. 121; Depot Co. v. Railroad, 131 Mo. 291, 305, 31 S. W. 908; City of St. Louis v. Laclede Gas Light Co., 155 Mo. 1, 19, 55 S. W. 1003; Sedalia Brewing Co. v. Sedalia Waterworks Co., 34 Mo. App. 49; Meyer v. Christopher, 176 Mo. 580, 75 S. W. 750.] It is especially significant in this connection that when the parties came to renew this franchise contract after acting on it for twenty years and knowing the particular construction given to it during all that time, that, while making some other needed changes, especially as to rates, its provisions in this respect were left unchanged. We think we would be justified in saying that the reason why the ordinance contract lacks definiteness in this particular is because the parties so thoroughly understood what was intended that it was not made a special matter in the contract.

Where the ordinance contract is silent on the question of putting in service pipes, there is much conflict as to whether the law imposes on the water company or on the consumer the burden of connecting the water mains with the private property. 1 Wyman on Public Service Corporations, section 824, says: "For example it is not settled whether a water company is obliged to lay and pay for the service pipes from the street mains to the premises of the consumer, or whether the consumer himself must pay for the service pipes," and cites authorities on both sides of the proposition and concludes that the weight of authority is in favor of the consumer having this burden. The authorities are also collected in the note to Pine Bluff Corporation v. Toney, 23 Am. & Eng. Ann. Cas. (Ark.)

544, showing the same conflict of authority. The following authorities hold that it is the duty of the consumer: State v. Gosnell, 116 Wis. 606, 93 N. W. 542, 61 L. R. A. 33; Sheffield Waterworks Co. v. Bingham, 25 Ch. D. (Eng.) 443; Franke v. Paducah Water Co., 88 Ky. 467, 11 S. W. 432, 718, 4 L. R. A. 265; Gleason v. Waukesha County, 103 Wis. 225, 79 N. W. 249; Prindiville v. Jackson, 79 Ill. 337; Donovan v. Oswego, 86 N. Y. S. 155, 90 App. Div. 397; Jackson v. Ellendale, 4 N. Dak. 478, 61 N. W. 1030; Warren v. Chicago, 118 Ill. 329, 11 N. E. 218; Southend Waterworks Co. v. Howard, 13 Q. B. D. (Eng.) 215. Some of the cases holding that the water company must bear this burden have already been noticed, to which may be added Pocatello Water Co. v. Standley, 7 Idaho, 1, 61 Pac. 518; Bothwell v. Consumers' Co., 13 Ida. 568, 92 Pac. 533; State v. Hoquiam Water Co., 127 Pac. (Wash.) 304; Hatch v. Consumers' Co., 17 Idaho, 204, 104 Pac. 670.

In this condition of the law, we find that the Kansas City Court of Appeals, knowing this diversity of opinion, has followed the cases holding that such duty is on the consumer. [Fisher v. St. Joseph Water Co., 151 Mo. App. 530, 132 S. W. 288.] The court there said: "Whether or not the rule which imposed on the consumer the burden of making connection between his premises and the street main was a reasonable regulation is a question we answer in favor of defendant. Though the authorities are not in accord on the proper answer to that question, those cited by defendant (State v. Gosnell, 93 N. W. [Wis.] 542, and Waterworks Co. v. Bingham, L. R. 25, Ch. Dev. 443) advocate the view that the consumer takes his water at the street main and must stand the expense of conducting it to his house and of measuring what he uses." The case quotes with approval from the English case of Waterworks Co. v.

Bingham, supra, which is the leading case on the side of placing the burden on the consumer, and winds up by saying that "The decisive point in the case is that the consumer under reasonable rules and regulations received the water he uses at the street main and not at his property line or in his house." The cases of Mallon v. Water Com'rs, 144 Mo. App. 104, 108, 128 S. W. 764; Mulrooney v. Obear, 171 Mo. 613, 71 S. W. 1019, and State v. Gas Light Co., 34 Mo. App. 501, lend some support to this position. We think we should follow the Kansas City Court rather than be in conflict with it.

Nor do we think that it can be said that because the Fisher case grew out of negligence in maintaining the service pipes and that there was no ordinance making it the duty of the water company to repair these pipes, that that case is different from this one. That is reasoning in a circle, as it requires us to hold the ordinance in question valid in order to make a difference in the cases and then because of the difference to hold that this ordinance is valid. Besides, it has been held that the law holds him responsible for negligence on whom the primary duty falls to repair or remove the cause of the negligence, in that case the service pipe, and that such liability cannot be shifted to another either by the act of the party so liable or by city ordinance. [Norton v. City of St. Louis, 97 Mo. 537, 11 S. W. 242.]

Public service corporations are conceded to have the right to make reasonable rules and regulations governing matters connected with their serving the public not covered by public laws or the franchise ordinance. [State ex rel. v. Gas Light Co., 34 Mo. App. 501, 506, 30 Ency. of Law (2 Ed.), 418; 1 Wyman on Public Service Corporations, section 417.] Besides, the ordinance contract in question provides for the water company's making such reasonable rules and regulations, and sections 15 and 20 thereof, as before noted, by clear implication give the water company the

right to make the particular rule now under considera-
tion. The judgment of the trial court will therefore
be affirmed. *Farrington, J.,* concurs. *Robertson, P. J.,*
concurs in result.