LUCY WILLIAMS, RESPONDENT, v. INDEPENDENCE WATER WORKS CO., APPELLANT.—171 S. W. (2d) 759.

Kansas City Court of Appeals. May 3, 1943.

1232

*Tom J. Stubbs* and *J. Marcus Kirtley* for appellant.

1234

*C. R. Leslie, A. B. Taylor* and *Walter A. Raymond* for respondent.

BLAND, J.—This is an action for damages for personal injuries. Plaintiff recovered a verdict and judgment in the sum of $4000, and defendant has appealed. The case was originally brought against the present defendant and the City of Independence but, at the close of plaintiff's evidence, she dismissed as to the City.

The facts show that defendant is the owner and operator of a waterworks system in the City of Independence; that on June 11, 1941, plaintiff was employed at 900 West White Oak Street, in that City and, while leaving the house enroute to enter an automobile, waiting in the front thereof, for the purpose of visiting her sick daughter, she stepped on a lid covering a meter box housing two meters belonging to the defendant, causing the lid, which was insecurely seated, to tilt. This resulted in plaintiff falling into the meter hole causing personal injuries to her for which she sues.

The meter box in question was about four feet in depth and the cover or lid was eighteen inches in diameter. The box was located in, and near, the lower edge of a three foot terrace in the yard in front of the house. The box was from four to eleven inches north of the sidewalk and entirely off of private property and in the public street. There was no direct evidence as to who installed the box. The present owner of the property moved there about the year 1922 and the conditions, at the time of the trial, were practically the same as they were when he moved into the property. No prior owner of the property testified. It is to be inferred from the evidence that the box was constructed sometime prior to 1915.

Plaintiff admits that the franchise ordinance of 1898 was in force and effect at the time the meter box was constructed. By this ordinance the City of Independence granted to the defendant a franchise to construct, maintain and operate a waterworks in and adjacent to the City of Independence and to distribute throughout the city wholesome water, to extend and lay down pipes and conduits throughout the streets, avenues, lanes or alleys and public grounds of the city. The city reserved the right to make and enforce all regulations as to streets, avenues, lanes and alleys on which the mains or pipes might be laid and to make proper regulations as to the conducting of all operations thereon and therein. The ordinance provided that the water consumers, when they so desired, should be permitted to use water by water measurement upon furnishing an approved meter, defendant having the right to set meters whenever there was any doubt as to the quantity of the water used or wasted; that the City should pass all reasonable ordinances for the

protection of the waterworks, fire hydrants, mains, valves and stop boxes, and to provide for the punishment of persons injuring the same in any manner, or interfering with the construction or operation of the same; that "Said Independence Waterworks Company and its assigns shall have the right to make needful rules and regulations not conflicting in any manner with the terms of this ordinance for the tapping of the water mains of which it reserves the sole right and the protection of said waterworks."

The franchise given to the defendant under this ordinance ran for twenty years.

Plaintiff, also, introduced in evidence another franchise ordinance passed by the City in 1918. The provisions of this ordinance, insofar as they have any bearing upon the issues in this case, are similar to those in the ordinance of 1898, with the exception of section 6, which provides:

"Where water is furnished to regular private consumers through a meter, it shall be the duty of the consumer to exercise all reasonable care to protect the meter from damage from freezing, hot water, or outside agencies, and when damage is so incurred through neglect or carelessness, the fault of the consumer, he shall pay the cost of the necessary repairs to the meter to put it in good working order. The consumer shall so arrange his piping and conduits as to provide a suitable place, and box if necessary, to set the meter box. No box or meter shall be set outside the property lines."

Section 15 of the ordinance of 1918 provides:

"Where leaks occur in the services between the Water Company mains and the curb box, the said company shall at once repair said leaks and charge the property owner a reasonable cost therefor."

In 1931 the City passed an ordinance providing punishment "for any person who shall wilfully molest, disturb, break, damage, or in any manner wrongfully interfere with or injure the towers, reservoirs, plugs, water gates, or valves, mains, pipes, fire plugs, hydrants, drinking fountains, or any other appliance or machinery used in supplying this City with water, or shall in any manner impede the flow of water through any of the water mains or pipes within this City."

Plaintiff called as a witness M. B. Bliss, who testified that he had been employed by the defendant since November 1, 1940; that he had been its general manager since January 1, 1942; that the records of the defendant do not show who built the meter box in question, but do show that defendant did not construct it; that if there was any agreement between defendant and its private customers as to who should take care of the meter boxes containing the meters for the measurement of water delivered to such customers, it was in the franchise ordinances; that defendant bought and put the meters in the meter box in question; that when a customer has the water turned off and a new customer comes into the property the service

men are instructed to see that the meter well is in good repair before the company replaces another meter in it; that no inspection is made of covers or meter boxes, other than to see that they are in a safe condition; that if a customer lives in a house for twenty years there would be no inspection of the meter hole during his occupancy; that defendant had never installed any meter lids; that it had put in some meter boxes in certain sections of the city but the customers paid for the installations; that he did not know of a single instance when defendant installed, at its own expense, water services or meter boxes from the water mains owned by the defendant in the street to the customer's house, or, any instance where such services were repaired by the defendant; but that all such services were installed and repaired at the expense of the property owner; that defendant makes no inspection of water meter boxes; that, if information comes to defendant that such a box is out of repair it advises the property owner or tenant, who does the repairing, and that defendant does not do it; that defendant does not carry any lateral service line or manhole cover of water meter boxes on its books as an asset; that water rates are based upon the operating cost after depreciation upon the investment.

Defendant's witness, Ira Cairns, testified that he had been employed by the defendant for seventeen years; that his duties were general, but he did not read meters for the defendant; that he did not know of defendant making any repairs on any meter boxes that he had installed water meter boxes while employed by the defendant; that he had put covers on them, including new lids; that he had installed water services, including meter boxes; that the office had directed him to go where covers were broken and put new ones on; that if he saw a manhole or meter box cover off or broken he would stop and put it on and would report the cover to the defendant if he saw one broken; that in putting lids back on defendant "always tells you to fix them right"; that defendant gave him no orders to inspect lids between meter readings; that he could not tell what orders defendant gave him about putting covers back because he was not a meter reader. He did not testify as to who paid for the installations or the repairs that he mentioned.

H. A. Gallagher, testifying for the defendant, stated that he had been employed by defendant since 1908; that prior to January 1, 1942 he had been general manager for defendant; that the only occasion when defendant installed meter boxes was when the work was done under a plumbing contract, "not for" itself; that in such cases the property owner would pay defendant; that "the service installation, of course, would belong entirely to the property owner and the company would make the installation in some instances and charge them for it. Q. . Charge the private property owner for it? A. Yes, charge the private property owner;" that the defendant carried in

stock manhole meter box covers which were sold to the public or the property owners who were having services installed; that defendant did not maintain the covers but probably would give them to an employee to put on the manholes, or, probably would give them to plumbers who would make the repairs, but that defendant never provided a cover at its own expense; that defendant put in very few services; that they were customarily put in by licensed plumbers; that defendant had installed services and the customer would pay for them in deferred payments; that the term "water services" is "used to designate the small pipe line extending from the main to and into the property, a service line"; that a service line includes meter boxes unless the meter is installed in the basement of the building services; that since 1918 defendant always had a rule requiring the customers to construct, or have constructed, the lateral services lines; that he knew nothing of who placed the meter box in question or who owned the property at the time it was put in; that defendant's meter readers, when reading meters, are instructed to put the lids back on securely and to clean the dirt, if any, from under the lid so that it would rest securely on the flange; that defendant had no system of inspection of meter box covers between meter readings; which readings were made every three months; that the only inspection done by defendant was incidental in connection with the reading of the meters.

Defendant insists that its instruction in the nature of a demurrer to the evidence should have been given for the reason that defendant was under no legal duty to maintain the meter box in question.

Defendant not only did not construct the meter box but was under no duty to construct it. The ordinance of 1898 in effect, at the time this meter box was installed did not expressly provide who should construct, or bear the expense of installing, the services connecting the mains of the defendant in the street with the houses or buildings of its private customers. Unless the ordinance provided that defendant construct them, or bear the expense thereof, the duty rested upon the customer. [City of Joplin v. Wheeler, 173 Mo. App. 590, 608, 609, 610.] In addition, it appears that defendant's regulations provided that the customers should install the services, which included the meter boxes. In the absence of a contract to the contrary this was a reasonable regulation. [State v. The Sedalia Gas Light Co., 34 Mo. App. 501; Mallon v. Water Commissioners, 144 Mo. App. 104; 27 R. C. L., p. 1412; Birmingham v. Hernandez (Ala.), 71 So. 443; 1 Wyman on Public Service Corporations, p. 702.]

As there is no evidence that defendant constructed the meter box in question, it can only be held for plaintiff's injury if it was under the duty to properly maintain the box and failed to do so. There is no evidence of any such duty on defendant unless such was imposed upon it by reason of the fact that it assumed the burden of keeping

it in repair or the law imposed upon it that duty because it made use of the meter box, if it did.

The franchise ordinance of 1918, section 6, places the burden upon the consumers of maintaining the meter boxes connected with their services. Plaintiff insists that this ordinance was passed after the installation of the meter box in question and, consequently, was not binding upon the consumer. However, to say the least of this provision it is declaratory of the general law which places that burden upon the consumer, under the circumstances. [See Fisher v. St. Joseph Water Co., 151 Mo. App. 530, 536.]

Plaintiff insists that "The meter was not used by the property owner but was for the use and benefit of appellant in controlling its water system and for measuring the water used by the consumer to enable appellant to collect its water rates. Under these circumstances it clearly was the duty of appellant to keep this meter hole in repair."

In this connection plaintiff urges that the 1931 ordinance forbids the consumer from disturbing the meter box in any manner and puts it in the exclusive possession of the defendant. It would be just as reasonable to say that the ordinance forbids the water company from disturbing its property, as to say it forbids the consumer to disturb his. If it were subject to the construction that the consuming property owner had no right to keep in repair his meter box it would be unreasonable and void as the city could not prevent such repairs being made under reasonable regulations. [Burningham v. Hernandez, supra, l. c. 446.]

The mere fact that the meter readers removed the covers every three months in reading the meters and, in this connection saw that they were replaced securely, did not put the covers or the meter boxes in the possession of the defendant or place the burden upon it to maintain them. If there is any evidence whatever in the record that the defendant made any repairs or replacements in connection with the meter boxes or covers, at its own expense, or in any other capacity than as the agent of the consumer, it is but slight. It may possibly be inferred from the testimony of the witness, Cairns, that some of the lids were replaced at the expense of the defendant; but this does not give rise to any implied agreement with the customer that defendant assumed the duty of replacing defective covers, or keeping them in repair and it imposed no legal liability upon it to do so. [Josey v. Beaumont Water Co. (Tex.), 183 S. W. 26; Jackson v. Mayor, etc., of City of Ellendale (N. D.), 61 N. W. 1030.]

Plaintiff calls our attention to section 2 of the 1918 franchise ordinance providing that nothing in the ordinance should be construed to absolve the defendant of any liability for any injury to a person or property resulting from the negligence or fault of the defendant or its employees. In this connection plaintiff says that the ordinance prohibits the shifting of defendant's liability, for its negligence, on

to the customer. Of course, this begs the question, for the reason that it must first be determined whether defendant was negligent in the premises before section 2 of the ordinance can have any application. Under the authorities in this state defendant was under no duty to maintain the meter box in question and it was under no duty to plaintiff herein. [Fisher v. St. Joseph Water Co., *supra*; City of Joplin v. Wheeler, *supra*; Goldsmith v. City of Kennett, 78 S. W. (2d) 146; Banty v. City of Sedalia, 120 S. W. (2d) 59.] Consequently, defendant's demurrer to the evidence should have been sustained.

The three cases last cited are founded upon the first one, or that of Fisher v. St. Joseph Water Company. Plaintiff insists that the present case is to be distinguished from the Fisher case because the ordinance in that case authorized the company to make rules and regulations, which it proceeded to do, providing that the customer should pay the expenses of installing the water service. As before stated, in the case at bar the general law required the customer to pay all of the expenses of installing the water service (see City of Joplin v. Wheeler, *supra*), and, in addition, the company had the inherent power to promulgate rules and regulations placing this burden upon the customer, even though the franchise ordinance may not have so provided, so long as it did not prohibit it. (The two franchise ordinances inferentially provide that the customer should install the service because they say that defendant had the right to promulgate rules for tapping the water mains.) It is true that in the Fisher case the evidence showed that the property owner bought and paid for the box, whereas, the evidence in this case does not show who paid for the meter box. However, as we have already indicated, this circumstance does not help the plaintiff here in any particular but, if anything, is against her, as the evidence shows that defendant did not construct the box and, in addition, it is to be inferred that, if defendant did not construct it, the property owner did.

However, plaintiff says that, in the Fisher case, there was no evidence that the water company, at any time, attempted to repair the meter boxes or the lids, whereas, in the case at bar, defendant did replace lids and make repairs on meter boxes. There is no evidence, or inference from the evidence, that defendant made any repairs on the meter box or the cover in question. There may be an inference that it replaced lids on some boxes at its own expense; but, as before stated, this is not sufficient, of itself, to impose any duty upon defendant to maintain the lids or the meter boxes in repair.

However, it is insisted that the meters in the boxes belonged and were maintained by defendant for its benefit for measuring water used by its customers to enable it to collect its water charges; that, to say the least, the box and lid in question were maintained for the joint benefit of the defendant and its customer and, as it was in a

public street, defendant was under the duty to third persons to see that the same was maintained in a reasonably safe condition.

Plaintiff says that, although, as between the water company and the customer, in this instance, the burden may have been upon the latter to have maintained in reasonably safe repair, the meter box in question that, as between a member of the public, a third party who was lawfully using the street, the water company should be held liable because it used the instrumentality for its own purposes and, consequently, it was under the duty to maintain it, although, it was not the owner.

There is some plausibility in plaintiff's contention in this regard and there are some cases in other states upholding it. [See Indianapolis v. Schoenemann, 20 N. E. (2d) 671.] However, substantially the same contention as is made here was urged by the plaintiff in the Fisher case. [See Fisher v. St. Joseph Water Co., *supra*, l. c. 536.] The court in that case held, in effect, that it is not only the duty of the customer to construct the water service but the duty of measuring the water is upon him and that the installation of the meter and the reading of it by the company is merely the performance of an act for the convenience of the consumer; that the incidental benefit that the water company might derive from the situation is not sufficient to impose any duty upon it to maintain the covering protecting the meter.

Plaintiff asks us to overrule the Fisher case. However, the law laid down in that case has so long been established in the jurisprudence of this State that we do not feel justified in departing from it. In fact, it has become a leading case in this country, having been followed by numerous courts outside of our own State.

From what we have said the judgment should be reversed, and it is so ordered. All concur.